[No. 11724. In Bank.—June 7, 1888.]

THE PEOPLE ex rel. S. F. DANIELS, Respondent, *v.* F. W. HENSHAW, Appellant.

Police Court of Oakland—Act of March 18, 1885—Repeal of Act of March 10, 1866.—The act of March 18, 1885, entitled "An act to provide for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and to provide for officers thereof," repealed the act of March 10, 1866, establishing a police court in the city of Oakland, and abolished the office of police judge of that city as created by the latter act.

Id.—General Law—Uniform Operation.—The act of March 18, 1885, is not obnoxious to section 1 of article 11 of the constitution, providing that "all laws of a general nature shall have a uniform operation."

Id.—Act Taking Effect at Different Times—Special Legislation.—The provision in the act of March 18, 1885, making it take effect in each city to which it applies at different times, that is to say, at the expiration of the term of the then incumbent in the office of police judge of such city, or whenever a vacancy occurs in such office, does not prevent the act from having a "uniform operation," within the meaning of section 1 of article 11 of the constitution, requiring all acts of a general nature to have a uniform operation; nor does it have the effect to render the act local or special legislation.

Id.—Municipal Corporations may be Classified.—The legislature has power to classify municipal corporations according to population, and the courts will not interfere with the manner of its classification.

Id.—Law Applicable to Certain Classes of Municipalities.—A law which is applicable to one or more, but not to all, of the classes into which municipal corporations are divided, is not, for that reason, special legislation.

ID. — MUNICIPALITIES ORGANIZED PRIOR TO CONSTITUTION. — The legislature
has power to pass general laws affecting municipal corporations, without
reference to whether such corporations were formed before or after the
constitution of 1879.

ID. — SUFFICIENCY OF TITLE OF ACT. — The title to the act of March 18,
1885, is sufficiently explicit and comprehensive to designate the matters
stated in the act.

APPEAL from a judgment of the Superior Court of
Alameda County.

.The facts are stated in the opinion of the court.

*James A. Johnson, Moore & Reed, Henry Vrooman,* and
*George E. Whitney,* for Appellant.

*Fox & Kellogg, J. C. Martin, John Yule,* and *Attorney-
General Marshall,* for Respondent.

SEARLS, C. J. — This action was brought against the
defendant, F. W. Henshaw, for usurpation of an office,
as provided by the Code of Civil Procedure, sections 803
to 810.

The judgment in the court below was against defend-
ant, who appeals.

The case comes up on the judgment roll, containing
the following agreed statement of facts: —

"It is hereby stipulated and agreed by and between
the respective parties hereto, plaintiff and defendant, —

"1. That there was a municipal election held in the
city of Oakland, on the eighth day of March, 1886, at
which relator, S. F. Daniels, received the highest number
of votes cast for police judge of the city of Oakland, for
the full term of two years next ensuing after such elec-
tion, to succeed himself, he then being the duly elected,
qualified, and acting incumbent of the office.

"2. That within the time prescribed by law, he took
the oath of office, and duly qualified as required by law.

"3. That he is eligible, qualified, and competent to
discharge and perform the duties of the office.

"4. That he is of right entitled to have, hold, and enjoy the rights and emoluments of the office of police judge of the city of Oakland, for the full term of two years from and after his said election, and that he should be let and put into possession of the said office, and should receive its emoluments, if such office now exists.

"5. It is further stipulated and agreed that the only question involved in this proceeding is, whether or not the office of police judge of the city of Oakland was abolished by an act of the legislature of the state of California, entitled 'An act to provide for police courts in cities having thirty and under one hundred thousand inhabitants, and to provide for officers thereof,' approved March 18, 1885.

"It being further stipulated and agreed that if the act above named did abolish the office of police judge of the city of Oakland, as provided by an act of the legislature entitled 'An act to establish a police court in the city of Oakland, and define its jurisdiction, duties, and fees of courts and its officers,' approved March 10, 1866, and the supplementary and amendatory acts thereto, then the defendant is entitled to have and hold the said office, and exercise its functions; but that if the said act did not abolish said office, then and in that event, the relator, S. F. Daniels, should be let and put into possession of the said office, and have and receive its emoluments and exercise the functions of said office."

As will be seen, the agreed statement of facts, by conceding the right of the relator, Daniels, to the office of police judge, if "such office now exists," and the right of respondent Henshaw to the office of judge of the police court, if there is no such office as police judge, eliminates from the problem all questions except one, viz.: Was the office of police judge of the city of Oakland abolished by an act of the legislature of the state of California, entitled "An act to provide for police courts in cities having thirty thousand and under one hun-

dred thousand inhabitants, and to provide for officers thereof," approved March 18, 1885? (Stats. 1885, p. 213.)

The city of Oakland was incorporated as a municipal corporation by an act of the legislature, approved March 25, 1854. (Stats. 1854, p. 183.)

The charter provided for various officers, among them a mayor, upon whom, among other powers, was conferred jurisdiction of all violations of the city ordinances, and like jurisdiction as is conferred upon justices of the peace.

On the fourth day of April, 1864, an act of the legislature was passed under which one justice of the peace was provided for in said  ity with like powers within the city of Oakland as justices of the peace in the county of Alameda. (Stats. 1863–64, p. 383.)

On the tenth day of March, 1866, an act of the legislature was approved, entitled " An act to establish a police court in the city of·Oakland, and define its jurisdiction, duties, and fees of court and its officers. (Stats. 1865–66, p. 193.)"

This last statute provided for the election of a police judge in and for said city of Oakland, who should serve for two years. To the police court was given jurisdiction of certain public offenses committed in the city, such as petty larceny, assault and battery, breaches· of the peace, riots, affrays, misdemeanors, etc., all actions for the violation of city ordinances, both civil and criminal, and in certain civil actions in which the city was a party or interested, his jurisdiction being limited in civil and criminal cases as is that of justices of the peace.

This law, with certain amendments to it not material to the present inquiry, entitles relator to the office of police judge, unless repealed by the act of 1885, specified in the agreed statement of facts.

The question presented naturally suggests a division under two heads:—

1. Did the legislature seek, by the act of 1885, to repeal the act of 1866.

2. Had it the power to do so by the method pursued? The act itself must furnish the *data* for the solution of the first question.

Section 1 of the act of 1885 is as follows:—

· "The judicial power of every city having thirty thousand and under one hundred thousand inhabitants shall be vested in a police court to be held therein by the city justices, or one of them, to be designated by the mayor, but either of said city justices may hold such court without such designation, and it is hereby made the duty of said city justices, in addition to the duties now required of them by law, to hold said police court."

Section 2: "The police court shall have exclusive jurisdiction of the following public offenses committed in the city." Then follows a list of the offenses, among which are petty larceny, assault and battery, breaches of the peace, riots, affrays, willful injury to property, and all misdemeanors punishable by fine or imprisonment, or by both; of proceedings respecting vagrants, etc.; following almost precisely the language of the act of 1866.

Section 3 gives exclusive jurisdiction for violation of ordinances, and for the collection of any license provided by said ordinances, as was provided in section 4 of the act of 1866.

Section 6 provides for a clerk of the police court, to be appointed by the city council; prescribes his duties, etc.

The subsequent sections provide for the payment of the fees of the court into the city treasury, for a seal for the court, for appeals to the superior court, authentication of records, etc., following in most respects the framework of the law of 1866.

The language of the first clause of the first section of the act of March 18, 1885, in terms comprehends every city having a population of thirty thousand and under one hundred thousand inhabitants.

The second and third sections give *exclusive* jurisdiction to the court therein provided for, in the very cases previously confided to the former court. This power is incompatible with that exercised by the former court. Both cannot exist together. If the latter has *exclusive jurisdiction*, the former cannot exist and transact business as a court.

The last section of the act of 1885 shows, as we think, the intention of the law-making power. It is as follows:—

"This act to go into effect upon the expiration of the term of office of the present police judge of said cities, or when a vacancy occurs therein."

Evidently the object of this last section was to leave the police judges in office until the expiration of their terms, or until a vacancy should occur in the office, and then to succeed them by the new courts created by the statute.

We peruse the statute in vain for evidence of any intention to limit its application to a portion only of the corporations included within its general terms. We therefore conclude the intention of the legislature to have been to provide for police courts and judges thereof in all the cities of the state having thirty thousand and less than one hundred thousand inhabitants.

The law does not favor the repeal of statutes by implication, and will in all proper cases, in the absence of an express clause repealing a former act, so construe the new law that both may stand; but where, as in the present case, the latter statute is repugnant to the former, and both cannot stand together, the latter will repeal the former.

It was said in *City and County of Sacramento* v. *Bird*, 15 Cal. 295: "Every statute must be considered according to what appears to have been the intention of the legislature, and even though the statutes relating to the same subject be not in terms repugnant or inconsistent,

if the latter statute was clearly intended to prescribe the only rule which should govern in the case provided for, it will be construed as repealing the original act." (See also *State* v. *Conkling*, 19 Cal. 512; *Norris* v. *Crocker*, 13 How. 429; Sedgwick on Statutory and Constitutional Law, 124; *Fraser* v. *Alexander*, 75 Cal. 147.)

We think the intention of the legislature to frame a general law, the framework of which should include the class of cities in question, the repugnancy of such law to the former statute, and the intention to repeal the former statute, are all apparent upon the face of the act of March 18, 1885.

The more difficult question remains: Had the legislature power to pass the act of March 18, 1885, in the form which it assumed, and thereby repeal the former law?

It is contended by counsel for relator that the legislature had no such power; that by the method adopted in the act of 1885, the legislature had no power, either directly or by implication, to alter, amend, or repeal the whole or any part of the act of 1866, for the reasons:—

1. The act of 1885 is in conflict with section 1 of article 11 of the constitution, in that by its own terms it must take effect in different cities at different times; that is to say, when the term of the police judge expires, or when there shall be a vacancy in his office.

Section 1 of article 11 of the constitution provides that " all laws of a general nature shall have a uniform operation."

In order to constitute the uniformity of operation specified in the constitution, it is not necessary that the general law must operate alike upon all the subjects or persons to which it applies, independent of all other considerations, but that it shall operate uniformly upon all persons standing in the same category, and upon rights and things in the same relation. The law which punishes the different grades of crime differently, each according to its grade, is not lacking in uniformity of

operation because it metes out one punishment to the burglar and another to the murderer, or because it fails to punish the innocent.

A law which required railway engineers to give notice by blowing a steam-whistle or ringing a bell upon approaching a road or street-crossing would not be lacking in uniformity of operation because a like warning was not required of footmen or drivers of ox-teams.

To similar facts under like circumstances, to persons similarly situated, the law must apply uniformly.

The law must be as general as the subject to which it relates, and its application must be uniform as to all persons and things embraced within it; or if the subject of the law is divided into classes, the provisions applicable to each class must apply to all matters or persons included in such class. (*Smith* v. *Judge of Twelfth District,* 17 Cal. 554.)

It must not grant to any citizen, or class of citizens, privileges which, upon the same terms and under like circumstances, shall not equally belong to all citizens. (*Brooks* v. *Hyde,* 37 Cal. 366; *Ex parte Keating,* 38 Cal. 710.)

In this last case it was said in substance that it was not intended by the provision under consideration to prevent legislation which is local in its operation, or special in its effect, or that all differences founded upon class or sex should be ignored.

It is mainly urged under this head that the law does not have a uniform operation, in that by its own terms it must take effect in different cities at different times, that is to say, in each city to which it applies at the expiration of the term of the then incumbent in the office of police judge in such city, etc.

It is argued that, as the terms of the police judges must expire or vacancies occur at different periods of time, and as the law only takes effect when the term expires or the vacancy occurs, there can be no uniformity

as to time, and hence no uniformity of operation in the law.

This argument involves the consideration of what is meant by the term "uniform operation," as used in the constitution.

Does it involve, as an essential, identity of time, so as to make it necessary that it take effect at the same time upon all subjects to be governed by it?

In an extreme sense this question must be answered in the negative. Nearly all general laws, however uniform in their operation, apply to — or may apply to — and affect persons or property, or both, not *in esse* at the date of their passage. This certainly cannot be urged as an argument against uniformity. If the law operates equally upon all the objects embraced within it, when they come within the circle or scope of its authority, the uniformity of operation contemplated by the constitution is attained.

A general law to fill vacancies in office cannot be void for want of uniformity of operation because such vacancies must occur at different periods. If it meets every contingency when it arises and treats all the contingencies of like character in like manner, it is uniform in its operation.

We do not think identity as to the time of operation essential, except where it is coupled with identity of facts or circumstances.

Under the same circumstances, existing at the same period of time, the law must apply equally at the same time, or uniformity of operation is not attained. Beyond that, identity as to time of application is not necessary.

It would seem the last objection we have been considering is more properly referable to another head suggested by counsel for relator, viz.: —

Is it local and special legislation?

In support of the affirmative of this proposition, we are referred to the case of *Miller* v. *Kister*, 68 Cal. 145.

In that case the court held that section 4 of the act of
March 18, 1885, amending the act of March 14, 1883
(County Government Act), was local or special legisla-
tion, and unconstitutional.

The grounds of the decision, so far as important here,
were:—

1. That the amendment in question was a general
law.

2. That, as a general law, its operation was restricted;
so that as to certain salaries it did not apply until the
expiration of the terms of the incumbents then in office,
except as to the officers of counties coming under three
classes, and as to them it took effect at a date named in
the law.

The court held, under these circumstances, that while
the legislature could suspend the operation of the general
laws of the state, yet that when it did so the suspension
must be general, and that it could not be made in indi-
vidual cases, or for particular localities; citing Cooley on
Constitutional Laws, 391; *Omnibus R. R. Co.* v. *Baldwin,*
57 Cal. 165; *French* v. *Teschemaker,* 24 Cal. 544; and hold-
ing the law in violation of subdivision 29, article 4, of
the constitution, and as having the effect of destroying
the uniformity of the operation of the law.

The distinction attempted to be made by the statute
under consideration in that case is not found here. It
dealt with forty-eight classes of officers, and was to take
effect as to all of them except three classes, upon the ex-
piration of the terms of office of the incumbents. It
was a general law, applying alike to all the classes, but
took effect at different times upon different classes.

No such distinction is made by the law under consid-
eration here. The statute we are reviewing operates
alike upon all the persons to whom it applies, and it ap-
plies equally to all persons in the same category.

Under the authority given by our constitution, we
think it scarcely necessary to discuss the power of the

legislature to classify municipal corporations according to population. The manner of their classification is a subject for legislative control, and the courts may not interfere with the discretion vested in a co-ordinate branch of the government.

The manifest object of classifying municipal corporations according to population, and in preventing their creation by special laws, as provided by section 6 of article 11 of our constitution, was to avoid the necessity of special legislation. That cities containing a large population require different legislation from those composed of a few hundred inhabitants, is evident.

To so classify them that general laws applicable to these separate classes will meet the necessities of the case was a wise provision, and a law which applies to one or more, but not to all, of these cases, is not *for that reason* special legislation.

. The case of *Earle* v. *San Francisco*, 55 Cal. 489, relating to salaries of public school teachers, was held special legislation and void, because it selected from the general class of public school teachers of the state those within certain cities and counties, and regulated their salaries in a manner different from that of others without such localities. ·

· To fix the salaries in a class of towns, and leave the balance to be regulated by the local authorities, was said to be special legislation.

We are of opinion the act of 1885 is a general law.

. The decision of this court in *Thomason* v. *Ashworth*, 73 Cal. 73, renders it unnecessary for us to dwell upon the question of the right of the legislature to pass general laws affecting municipal corporations without reference to whether such corporations were formed before or after the constitution of 1879.

The title of the law, "An act to provide for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and to provide for offi-

cers thereof," is explicit, and sufficiently comprehensive to designate the matters stated in the act.

Some of the questions discussed by counsel in the briefs on file are eliminated from the record by the agreed statement of facts, and need not be mentioned; others are not of controlling importance, and we do not pause to notice them, beyond saying our opinion of them does not militate against the general conclusion that the office of police judge of the city of Oakland was abolished by the act of March 18, 1885, and, as a consequence, that under the agreed statement of facts the defendant, F. W. Henshaw, is entitled to have and hold the office of judge of the police court of the city of Oakland, and to exercise the functions of said office.

The judgment appealed from is reversed, and the court below directed to enter judgment in favor of defendant.

McFARLAND, J., and SHARPSTEIN, J., concurred.

THORNTON, J., concurring.—In the case of *Ex parte Henshaw on Habeas Corpus*, 73 Cal. 486, I expressed my opinion on the questions involved in this case. That opinion is in harmony with that of the chief justice herein. I have seen no reason to change my views on the questions involved herein since the opinion was pronounced in *Ex parte Henshaw*, and concur in the foregoing opinion of the chief justice.

McKINSTRY, J., dissenting.—I dissent. The question presented is, Was the act "to establish a police court in the city of Oakland, and define its jurisdiction, duties, and fees of court and its officers," approved March 10, 1866, and the acts supplementary thereto and amendatory thereof, repealed by the act entitled "An act to provide for police courts in cities having thirty and under one hundred thousand inhabitants, and to provide for officers thereof," approved March 18, 1885?

The act of March 10, 1866, as supplemented and

amended, was part of the charter of the city of Oakland prior to the adoption of the present constitution. Upon that subject I fully concur with the views of Hon. W. T. Wallace, judge of the superior court of San Francisco (late chief justice of the supreme court), as expressed in his recent decision in *Ex parte Casselli.* That learned judge said: "It [the act of 1866] provided for the election of a police judge 'at the charter election of 1867,' and that in the mean time the office should be filled by an incumbent to be elected by the 'city council of Oakland.' The police court thus established, and its incumbency thus provided for, had a jurisdiction local and criminal, coterminous with the boundaries of the city, embracing certain offenses when committed therein,— these were all cases of petit larceny, . . . . and 'all proceedings for violation of any ordinance of said city,' etc. It was vested beside with a civil jurisdiction, also local to the city,—actions for the collection of taxes and assessments 'levied in said city for city purposes'; or for the erection or improvement of school-houses and of public buildings; laying out, opening, and improving streets, sidewalks, lanes, alleys, etc.,—the purchase or improvement of public grounds, etc. In short, without further reciting the provisions of the act, it is seen to have been in its entire scope distinctly municipal in character, spending its whole force upon the government, civil and criminal, of the city of Oakland and the regulation of its internal municipal affairs." Again: "Had its *title* been 'An *act* to amend the charter of the city of Oakland,' instead of 'An act to establish a police court in the city of Oakland,' there can be little doubt that it would have equally well comported with the substance and body of the act. . . . . But the distinctive character of a legislative act is to be determined by the substance or its provisions as found in the body of the statute rather than by reference to the phraseology of the title prefixed. Especially is this so in considering the legislation occur-

ring under the former constitution of the state. Under
the legislative practice then prevailing, the title was
rarely a matter of legislative debate or scrutiny," etc.
(Citing *Adams* v. *City and County of San Francisco,* 50
Cal. 118.) And, after further argument and illustra-
tion, the learned judge concludes that the act of March
10, 1866, was incorporated into and became part of the
municipal charter of the city of Oakland.

In the same decision, Judge Wallace, conceding what
in his view it was not necessary to dispute,—that by
the sixth section of article 11 of the constitution the
charter of the city of Oakland was subject and controlled
by general laws, even such as might change the consti-
tution of all municipal organizations existing when the
state constitution was adopted,—proceeds to prove that
the act of March 18, 1885, entitled "An act to provide
for police courts in cities having thirty thousand and
under one hundred thousand inhabitants, and to pro-
vide for officers thereof," was not a *general law,* within
the meaning of the constitution. "Cities and counties"
and "towns" are omitted both from the title and body
of the act. "'Cities with population between thirty
thousand and one hundred thousand inhabitants' are
the only municipalities selected for the operation of the
act; 'cities and counties' with population between thirty
thousand and one hundred thousand are omitted alto-
gether; so are 'towns,' regardless of population." (*Ex
parte Casselli.*)

For myself, I am of opinion that the "general laws,"
mentioned in the last clause of section 6 of article 11 of
the constitution, do not include laws which change the
charters of cities organized before the adoption of the
constitution. As said by Mr. Justice Sharpstein, in
*Staude* v. *Election Commissioners,* 61 Cal. 325: "It is
clear to my mind that when the constitution declares
that cities organized before its adoption shall be subject
to and controlled by general laws, it means as to mat-

ters not specially provided for in charters which existed at the date of the adoption of the constitution. Otherwise, they would be subject to, and controlled by, general laws passed for the incorporation of cities and towns, without having first voted to organize under such laws."

The sixth section of article 11 of the constitution reads: "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws, whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to, and controlled by, general laws."

The city of Oakland, in my opinion, is not subject to, nor controlled by, the act of March 18, 1885, even if that act can be treated as in any sense a general law.

Assuming that the framers of the constitution did not intend to insert contradictory provisions in the same section,— that, after having declared that cities or towns organized before the adoption of the constitution should not be brought within the operation of the general laws providing for the incorporation, organization, and classification, in proportion to population, of cities and towns without the consent of a majority of their electors,—they did *not* intend immediately afterward to declare that cities and towns existing before the adoption of the constitution should be subject to and controlled by *such* general laws. Section 6 of article 11 is not difficult of interpretation.

1. Corporations for municipal purposes may not be created by special laws.

2. The legislature must provide by general laws for the incorporation, organization, and classification, in proportion to population, of cities and towns, which (general laws) may be altered, amended, or repealed. (The general laws under which, after the adoption of the constitution, cities and towns are to be incorporated and organized, must provide for the classification according to population *of the cities and towns incorporated and organized under them.*)

3. A city or town organized while the former constitution was in force may become organized under the general laws passed by direction of the present constitution for the incorporation, etc., of cities and towns, whenever a majority of its voters shall so determine. (And it cannot be made subject to such general laws, or any part of them, *without* the consent of a majority of its electors.)

4. A city or town, organized under the general laws for the incorporation of cities and towns, cannot be made subject to any statute changing its organization, except the statute is amendatory of the general laws under which it was incorporated, and is a statute operative, at least, upon all of its *class*, as cities and towns are *classified under such general laws.*

5. The legislature has complied with the mandate of the constitution by the enactment of the law of March 2, 1883, "to provide for the classification of municipal corporations," and the law of March 13, 1883, "to provide for the organization, incorporation, and government of municipal corporations." (Stats. 1883, pp. 24, 93.)

The first of these acts provides: "All municipal corporations within this state are hereby classified as follows: Those having a population of *more* than one hundred thousand inhabitants shall constitute the first class; those having a population of *more* than thirty thousand and *not exceeding* one hundred thousand inhabitants shall constitute the second class," etc.

The act of March 18, 1885, which is claimed to be operative in the city of Oakland, attempts to create a *single* class for a particular purpose,— a *different class* from any provided for in the general law, passed in obedience to the behest of the constitution for the classification of municipal corporations. It attempts to provide for a police court in every city "*having* thirty thousand and *under* one hundred thousand inhabitants."

If the act of March 18, 1885, is a general law, within the meaning of section 6, article 11, of the constitution, it applies to all cities, whether organized before the adoption of the constitution or afterward under the general laws of 1883, having a population of thirty thousand and less than one hundred thousand. It applies to all of that supposed class (at least), or it is not a general law. But will any one contend that after general laws have been passed for the incorporation, organization, and classification of cities in proportion to population, the legislature may create, not merely a new classification of all cities and towns for a special municipal purpose, but a single class, differing from any included in the general classification, for a special municipal purpose?

6. If, however, the act of March 18, 1885, can be treated as operative with respect to cities of the second class, formed under the general law of 1883, it constitutes an amendment of the general law providing for the incorporation, etc., of cities. An amendment is incorporated into and becomes a part of the statute amended. It seems very plain that inasmuch as the city of Oakland, created before the adoption of the constitution, cannot be forced to organize under, or be subject to, the general laws for the incorporation, organization, and classification of cities and towns without the consent of a majority of its electors, it cannot be made subject to a *part* of such general laws for the incorporation of cities and towns without the consent of its voters. If it can, the city of

Oakland may, without the consent of a majority of its voters, by means of a series of amendments of the general laws providing for the incorporation, etc., of cities, be transferred entirely under the *regime* of such general laws.

It being morally demonstrable that the "general laws" to which cities and towns organized before and after the adoption of the constitution are subject *are not* laws which would change the provisions of charters existing prior to the adoption of the constitution, full force and effect may be given to the last clause of section 6, article 11, by holding it to refer to laws general as opposed to local laws, or such as are limited in their operation to certain places, as to all or a particular class of cities and towns.   Upon this matter I have nothing to add to what I had occasion to say in *Thomason* v. *Ashworth*, 73 Cal. 73.   A city is a collective body of inhabitants, incorporated, etc.   The citizens are incorporated, —the charter is their charter.   They are subject to general laws, in common with all the citizens of the state. But a law operative only in one, two, or all cities, is not a general law within the meaning of section 6 of article 11, but is a local law.

I dissented from the opinion of the court in *Thomason* v. *Ashworth*, and I should not deem it necessary to dissent from the decision of a majority of the justices herein, were it not that, in my view, there is a clear distinction between that case and this.   Previous to the decision in that case this court had held that a certain provision of the constitution had "struck dead" the street law of 1872,—part of the charter of San Francisco.

If, as had been held by a majority of this court, the street law of 1872, part of the charter of San Francisco, was struck dead on the first day of January, 1880, then there were no provisions in the charter of San Francisco relating to or providing for street work, when the "street law" of 1885 was passed.   (Stats. 1885, p. 147.)

The street law of 1885, held valid in *Thomason* v. *Ashworth*, did not, therefore, interfere with or repeal any express provision of the statutes incorporating or organizing the city and county of San Fráncisco. But the case here is different. The act of March 10, 1886, to "establish a police court in the city of Oakland," was in full force and effect, as part of the charter of the city of Oakland, when the statute of March 18, 1885, "to provide for police courts in cities having thirty thousand," etc., was passed. If the last act became operative in Oakland, it altered, in a matter of most material concern, the city government there existing.