[Crim. No. 1806.   In Bank.—February 28, 1914.]

## In the Matter of the Application of J. C. WESTENBERG for Writ of Habeas Corpus.

CRIMINAL LAW—HIGH AND LOW MISDEMEANORS—MEANING AND APPLICATION OF TERMS.—The common-law distinction between high and low misdemeanors does not apply in this state; all offenses are either felonies or misdemeanors.   But misdemeanors of which police and justices' courts have jurisdiction, and which are punishable by fine not exceeding five hundred dollars or imprisonment not exceeding six months, or both, under section 1425 of the Penal Code, are commonly called low misdemeanors, while all other misdemeanors, punishment of which exceeds that mentioned, are designated as high misdemeanors.

ID.—JURISDICTION OF POLICE COURTS OVER MISDEMEANORS—POWER OF LEGISLATURE TO CONFER.—By sections 1 and 13 of article VI of the constitution the legislature is vested with power to confer jurisdiction over all misdemeanors on inferior courts established under the provisions thereof, unless jurisdiction over any of them is conferred upon some other court by the constitution itself.

ID.—CRIMINAL LIBEL—JURISDICTION OF POLICE COURT OF CITY OF OAKLAND.—Under such constitutional authority the legislature, by the Whitney Act (Stats. 1885, p. 213) providing for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and the act of 1901 (Stats. 1901, p. 576) further providing for the establishment of police courts in certain classes of cities and fixing their jurisdiction, conferred jurisdiction upon the police court of the city of Oakland over all misdemeanors, including the offense of criminal libel.

ID.—LIBEL—INDICTMENT OR INFORMATION—SECTION 8 OF ARTICLE I OF CONSTITUTION.—Section 8 of article I of the constitution, providing that "offenses heretofore required to be prosecuted by indictment shall be prosecuted by information or by indictment," does not require that criminal libel shall be prosecuted by indictment or in-

formation. This section has nothing to do with the finding of indictments or the filing of informations; it simply. deals with the place where the trial shall be had when prosecution for libel is by indictment or information in that class of libels consisting of publications in newspapers.

ID.—INDICTMENT FOR LIBEL—NECESSITY—SECTION 8 OF ARTICLE I OF CONSTITUTION.—Section 8 of article I of the ·constitution, which provides that offenses heretofore required to be prosecuted by indictment shall continue to be so prosecuted, and which enacts the rule of the constitution of 1849 that no person shall be held to answer for a capital or otherwise infamous crime, except in cases of petit larceny, unless on presentment or indictment of a grand jury, does not require that criminal libel be prosecuted by indictment. There was nothing in the former constitution, nor is there any provision in the present, requiring criminal libel to be prosecuted by indictment or information.

ID.—CRIMES WHICH MUST BE PROSECUTED BY INDICTMENT—INFAMOUS CRIMES.—The only offenses under the old constitution required to be prosecuted by indictment and embraced within the expression "offenses heretofore required to be prosecuted by indictment" in the present constitution, were and are "capital or other infamous crimes." Crimes are infamous either by reason of their punishment or by reason of their nature; in the first class fall all felonies, as the punishment therefor is imprisonment in the state prison. Criminal libel never has been a felony in this state, but always a misdemeanor, and as such it is not an offense infamous in its nature.

ID.—PRESENT CONSTITUTION—RE-ENACTMENT OF PROVISIONS OF OLD AS TO PROSECUTION BY INDICTMENT.—When the present constitution speaks of offenses "heretofore required to be prosecuted by indictment," the rule of the old constitution is re-enacted, and the same offenses as were required under it to be prosecuted by indictment are still required to be so prosecuted, except to the extent that the procedure under the old constitution has been remodeled in the present one by permitting, in addition to indictment, the new procedure by information after examination and commitment by a magistrate.

ID.—POLICE COURT OF OAKLAND—WHETHER ABOLISHED BY CHARTER OF 1911.—The former police court of the city of Oakland, originally created under the Whitney Act, was not abolished by the adoption of the freeholders' charter in 1911.

APPLICATION for Writ of Habeas Corpus to be directed against W. J. Petersen, Chief of Police of the City of Oakland, County of Alameda.

The facts are stated in the opinion of the court.

Robert F. Burns, J. P. Montgomery, M. A. Ross, and Wm. H. H. Hart, for Petitioner.

W. H. L Hynes, District Attorney, and Walter Burpee, Deputy District-Attorney, for Respondent.

LORIGAN, J.—This is an application for a writ of *habeas corpus*.

In a complaint filed in the police court of the city of Oakland, petitioner, the proprietor of a newspaper published in the city of San Francisco and circulated in the city of Oakland, was charged with the crime of libel committed through a publication in said newspaper. He was tried in said court, convicted, and sentenced to a term of imprisonment in the city prison of said city and appealed to the superior court of Alameda County, which affirmed the judgment. He then sued out this writ.

The only question presented here is as to the jurisdiction of the police court of the city of Oakland to try a case of criminal libel.

Crimes in this state are divided into felonies and misdemeanors, the former punishable with death or imprisonment in the state prison. Every other crime is a misdemeanor. The common-law distinction between high and low misdemeanors does not apply in this state. All offenses are either felonies or misdemeanors and our reference to misdemeanors as high or low misdemeanors in this opinion is simply for convenience of discussion.

By subdivision 3 of section 1425 of the Penal Code, the legislature conferrred on justices' courts and police courts generally jurisdiction over "all misdemeanors punishable by fine not exceeding five hundred dollars, or imprisonment not exceeding six months, or by both such fine and imprisonment." Such offenses are commonly called low misdemeanors.

All other misdemeanors, punishment of which exceeds that which marks the limits of the jurisdiction over misdemeanors in the police courts generally under the section just referred to, are designated as high misdemeanors. Criminal libel is one of the many offenses embraced in this latter class as it is punishable by fine not exceeding five thousand dollars or

imprisonment in the county jail not exceeding one year (Pen. Code, sec. 249) and unless jurisdiction over it has been constitutionally conferred by the legislature on police courts in incorporated cities such as the police court of the city of Oakland, then jurisdiction over it is by section 5 of article VI of the constitution invested in the superior court, as that section invests such courts with jurisdiction in all cases of felony "and cases of misdemeanor not otherwise provided for" and such misdemeanors can be prosecuted only in the superior court and there only by indictment or information. (Pen. Code, sec. 888.)

The present constitution declares that the judicial power of the state is vested in certain enumerated courts of record, including the superior courts; also in the justices' courts "and such inferior courts as the legislature may establish in any incorporated city or town, or city and county." (Art. VI, sec. 1.) As to superior courts it declares, as just stated, that they shall have jurisdiction "in all criminal cases amounting to felony and cases of misdemeanor not otherwise provided for." (Art. VI, sec. 5.) The constitution further provides "that the legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties and responsibilities of the judges thereof." It further empowers the legislature to provide for "the incorporation, organization and classification in proportion to population, of cities and towns. ... ." (Art. XI, sec. 6.)

In 1883 the legislature under authority of the last section classified municipal corporations within the state. (Stats. 1883, p. 24, and amendments thereto; Deering's Gen. Laws, p. 649.) Pursuant to the provisions of the constitution authorizing it to establish inferior courts in incorporated cities and provide for their jurisdiction, the legislature in 1885 passed what is known as the Whitney Act (Stats. 1885, p. 213) providing for police courts in cities having thirty thousand and under one hundred thousand inhabitants. This act provided a complete scheme for the organization and jurisdiction of said courts in such cities, and subdivision 3 of section 2 thereof conferred on such police courts exclusive jurisdiction over "all misdemeanors punishable by fine or imprisonment or by both such fine and imprisonment." Oakland was

then an incorporated city which by virtue of its population
came within the provisions of the act and a police court was
established in said city. So the legislation with reference to
said courts in cities coming within the terms of the Whitney
Act stood until 1901 when several acts of the legislature were
passed which further provided for the establishment of police
courts in certain classes of cities and fixed their jurisdiction.
These acts established such courts in cities of the first and
one-half class (Stats. 1901, p. 95) which embraced the city
of Los Angeles, and also in cities of the second class (Stats.
1901, p. 576) which embraced the city of Oakland, and con-
ferred upon such courts exclusive jurisdiction of ''all mis-
demeanors punishable by fine or imprisonment or by both
fine and imprisonment committed in the city where such
police court is held.'' Prior to and subsequent to the Whit-
ney Act Oakland was an incorporated city under a freehold-
ers' charter. In 1910 a new freeholders' charter was framed
and adopted for said city and approved by the legislature in
1911, [Stats. 1911, p. 1551]. By section 199 thereof it is pro-
vided that ''the judicial power of the city shall be vested in
a police court and in such justices' courts as are or may be
provided for by law, and the existing police court of the city
shall continue as it now exists,'' and in the exact language
of the act of 1901 establishing police courts in cities of the
second class provided for the same jurisdiction in the police
court of Oakland over all misdemeanors as is conferred under
that act.

In the case of *People* v. *Henshaw,* 76 Cal. 436, [18 Pac.
413], was involved the question of the power of the legisla-
ture exercised through the Whitney Act to establish police
courts in incorporated cities. It was held that it had such
power; that the Whitney Act was a valid exercise of it; that
the legislature could classify municipal corporations accord-
ing to population and pass general laws with reference to
them irrespective of whether such corporations were formed
before or after the constitution of 1879 and that the Whitney
Act was a law of a general nature and uniform operation.
The act of 1901 (p. 576), heretofore referred to, extending
the classes of incorporated cities in which police courts were
established and in which class the city of Oakland is embraced

must under the decision in the Henshaw case be held to be a valid exercise of legislative power.

It is to be observed, however, that while the Whitney Act conferred jurisdiction on the police court established under it over all misdemeanors, no question of the power of the legislature to confer this jurisdiction was involved in the Henshaw case. The only question there was as to the validity of the Whitney Act in establishing the police court as such. The question of how far the legislature under the constitutional provisions which we have referred to could confer upon police courts in incorporated cities jurisdiction over misdemeanors was first presented in *Green* v. *Superior Court,* 78 Cal. 556, [21 Pac. 307, 541], decided in 1889.

That case has always been considered as deciding that the legislature had power to confer exclusive jurisdiction in such police courts over all misdemeanors, high or low. In the Green case the superior court of the city and county of San Francisco was proceeding in a criminal case where the charge was conspiracy and the defendant applied to this court for a writ of prohibition on the ground that jurisdiction in such a case was vested exclusively in the police court of the city and county of San Francisco. Conspiracy was then, as now, punishable by fine not exceeding one thousand dollars or by imprisonment for a year, or by both. It was a high misdemeanor, jurisdiction over which was invested in the superior court unless the legislature had validly conferred jurisdiction over it upon the police court of the city and county of San Francisco. While the old constitution of 1849 was in force and under what is known as the Consolidation Act, as amended in 1871–72, [Stats. 1871–72, p. 84], the police court of the city and county of San Francisco was by the legislature given jurisdiction of misdemeanors which in terms included criminal conspiracy. After the adoption of the present constitution, as pointed out in the opinion in the Green case, the same jurisdiction conferred on said police court by the Consolidation Act was reaffirmed by legislation. (Stats. 1881, p. 75; Stats. 1889, p. 64.) The particular act reaffirming it being the act of 1889, entitled "An act to establish a police court in and for the City and County of San Francisco." The court in the Green case held that exclusive jurisdiction over the crime of conspiracy was vested in

the police court of the city and county of San Francisco and granted the writ of prohibition prayed for.

It is insisted by the attorneys for petitioner here that when the Green case is carefully examined it will be perceived that it was decided on the theory alone that conspiracy was a misdemeanor "otherwise provided for" before the adoption of the present constitution of 1879 because jurisdiction over it had been conferred on the police court of the city and county of San Francisco by the statutory law of 1871–72, and being so provided for, by this legislation under the former constitution, it continued to be provided for after the adoption of the present constitution; that any language or discussion in that case which might appear to sustain the power of the legislature under the provisions of the present constitution to confer jurisdiction over all misdemeanors upon police courts in incorporated cities is *dictum*, and the existence of that power still open to question. Aside from this, it is insisted that if the Green case may be considered as deciding that the legislature has power to confer jurisdiction on such courts over all misdemeanors generally, it may not be taken to include the misdemeanor of criminal libel because of certain constitutional provisions which were not presented to or considered by the court in that case and which petitioner claims deny power to the legislature to confer jurisdiction on such courts over cases of criminal libel.

Without considering this last point at present, there is nothing in the other points made as to what was decided in the Green case. It is true that in that decision the court referred to the jurisdiction conferred on the police court of the city and county of San Francisco by the Consolidation Act and said that the misdemeanor there involved was one over which jurisdiction had "already been provided for" at the adoption of the present constitution and strictly within the letter of that constitution—a jurisdiction which as far as it related to this particular police court of San Francisco had not been changed since the present constitution was adopted. But it is not true that this was the theory on which the case was decided or made the basis of the decision. This mention of the Consolidation Act was only made in chronologically stating the legislation whereby jurisdiction had been conferred on the police court both before and after the adoption

of the present constitution and reference to it was incidental only to the discussion of the main proposition which the court was considering,—namely, the extent of the power of the legislature under the provisions of the present constitution to confer jurisdiction on police courts in incorporated cities which was presented under the legislation which subsequent to the adoption of the present constitution reaffirmed that jurisdiction in the police court. The only reference to the Consolidation Act, aside from what has just been stated, was subsequently made in considering section 13 of article VI of the present constitution where, in holding that it was the intention thereunder to give the legislature power to confer jurisdiction over *all misdemeanors* on police courts in incorporated cities, the court said that such an intent "is manifest from the fact that the jurisdiction had already been conferred on the police court by an act (the Consolidation Act) which was in force at the time the present constitution was adopted." While jurisdiction had been conferred on the police court under the Consolidation Act, it had been not only reaffirmed by the legislature under power given to it by the present constitution, but by the act of 1889 an entirely new police court had been created for the said city and county as a substitute for that previously existing and the same jurisdiction conferred on the new court as had been conferred by the Consolidation Act. It was particularly to this latter legislation that the court was directing its attention and determining to what extent, under the present constitution, jurisdiction could be conferred on police courts in incorporated cities and towns. In that consideration the court did not discuss any of the provisions of the old constitution, but solely the provisions of the present constitution, setting forth those that we have heretofore referred to, under which the power to confer jurisdiction on police courts is granted. It referred to and quoted from cases previously decided by this court since the present constitution was adopted, and which hold that jurisdiction of the superior court over all misdemeanors "not otherwise provided for" ceased when the legislature otherwise provided for jurisdiction over any of them in justice's courts, which were the courts there involved; declared that there was no difference as to the exercise of that power between justices' courts and police courts; and referred to

the Whitney Act as the exercise by the legislature of power granted under section 13 of article VI of the present constitution to confer power on police courts over *all* misdemeanors. After this discussion, and meeting the point of petitioner principally insisted on in that case, that the powers granted to the legislature only authorized it to confer jurisdiction on police courts over low misdemeanors, the court held that the provision of the present constitution last referred to was comprehensive in its terms; that the legislative power was not restricted to any class of misdemeanor, high or low, but extended to such offenses generally. While we think there can be no doubt but that the point directly involved in the Green case was the extent of the power of the legislature under the provision of the present constitution to confer jurisdiction on police courts in incorporated cities over misdemeanors and that it sustained the power to confer it as. to all misdemeanors, still in order to remove any future misconception on that point we hold here that by sections 1 and 13 of article VI, the legislature is vested with power to confer jurisdiction over all misdemeanors on inferior courts established under the provisions thereof, unless jurisdiction over any of them is conferred upon some other court by the constitution itself.

It follows, therefore, that unless there is some merit in the other contentions of petitioner, now to be noticed, the legislature, under its authority to confer jurisdiction upon inferior courts over all misdemeanors, conferred such jurisdiction on the police court of the city of Oakland of the offense of criminal libel.

It is insisted by petitioner that criminal libel stands upon a different footing from the general class of high misdemeanors, and that by reason of certain constitutional provisions not presented or considered in the Green case, or any other case involving the jurisdiction of police courts over high misdemeanors, the legislature is precluded from conferring jurisdiction over it upon such a court.

The sections of the constitution thus relied on are section 8 of article 1 which provides that "offenses heretofore required to be prosecuted by indictment shall be prosecuted by information . . . or by indictment . . ."; and section 9 of the same article which, in guaranteeing liberty of speech and of the press, among other things provides that "Indictments

found, or information laid, for publication in newspapers shall be tried in the county where such newspapers have their publication office, or in the county where the party alleged to be libeled resided at the time of the alleged publication, unless the place of trial shall be changed for good cause.''

The claim under these sections is that the offense of criminal libel can be prosecuted only by indictment or information, and, as a consequence, can be tried only in the superior court. Taking the last constitutional provision invoked. Petitioner insists that this is a constitutional requirement that criminal libel shall be prosecuted by indictment or information. But it is nothing of the kind. This section has nothing to do with the finding of indictments or the filing of informations. It simply deals with the place where the trial shall be had when prosecution for libel is by indictment or information in that class of libels consisting of publications in newspapers. This was the sole purpose of this portion of the section.

Now as to section 8 of article I, relied on. Petitioner claims that at the time of the adoption of the present constitution criminal libel was one of the offenses required to be prosecuted by indictment, and that under the present constitutional provision cited, such offenses still are required to be prosecuted in that manner. The constitution of 1849 (sec. 8, art. I) provided that ''no person shall be held to answer for a capital or otherwise infamous crime except . . . in cases of petit larceny . . . unless on presentment or indictment of a grand jury.'' When the present constitution speaks of ''offenses heretofore required to be prosecuted by indictment'' the rule of the old constitution is re-enacted and the same offenses as were required under it to be prosecuted by indictment are still required to be so prosecuted except to the extent that the procedure under the old constitution has been remodeled in the present one by permitting, in addition to indictment, the new procedure by information after examination and commitment by a magistrate. It may be said in passing that this same point now made under the section invoked was also made in the Green case with reference to the offense of conspiracy involved there and held to be untenable. Nor do we deem it any more applicable to the offense of criminal libel. It is true that at the time of the

adoption of the present constitution criminal libel was prose-
cuted by indictment. This, however, was equally true of all
high misdemeanors excepting where, as we have seen, ex-
clusive jurisdiction over some of them was vested by the legis-
lature in the police court of the city and county of San Fran-
cisco, which seems to have been the only police court upon
which such jurisdiction was conferred before the adoption of
the present constitution. And it is even required now that
criminal libel or other cases of high misdemeanor be prose-
cuted by indictment or information in all cases where juris-
diction to try them has not been conferrred upon particular
inferior courts by the legislature under the constitutional
power invested in it to do so. This still applies very largely
as to such offenses. But while at the time of the adoption of
the present constitution criminal libel was in fact prosecuted
by indictment, this was only because, though the legislature
had the same constitutional power under the old constitution
(Const. 1849, art. IV sec. 1–10 amended in 1863, [Stats. 1863
p. 786]), as under the present to confer jurisdiction over
it on inferior courts, it had not done so; jurisdiction over it
was conferred by the legislature on the county court, and all
criminal proceedings prosecuted in that court were required
by the Penal Code to be prosecuted by indictment. (Sec.
888.) But this conferment of jurisdiction on the county
court over criminal libel, in common with all other high mis-
demeanors, and requiring their prosecution by indictment,
was purely statutory. There was nothing in the former con-
stitution, nor is there any provision in the present, requiring
that criminal libel be prosecuted by indictment or information.
The only offenses under the old constitution required to be
prosecuted by indictment and which are embraced within
"offenses heretofore required to be prosecuted by indictment"
in the present constitution were and are "capital or other
infamous crimes." Crimes are infamous either by reason of
their punishment or by reason of their nature. In the first
class fall all felonies, as the punishment therefor is imprison-
ment in the state prison. Criminal libel never has been a
felony in this state but always a misdemeanor. As such mis-
demeanor it is not an offense infamous in its nature. At com-
mon law crimes which rendered the person doing them in-
famous were treason, felony, and the *crimen falsi,* the latter

embracing not only offenses, involving falsehood, but offenses injuriously affecting the administration of justice. Criminal libel does not come within any of these classes. Our code does not define what are infamous offenses. It divides offenses simply into felonies and misdemeanors. In the absence of such definition the rule of the common law must govern, and under it a conviction for criminal libel did not render the perpetrator infamous. (Wharton's Criminal Law, 10th ed., vol. 1, sec. 20; 1 Grenleaf on Evidence, sec. 372; *People* v. *Toynbee*, 20 Barb. (N. Y.) 168.)

Our conclusion therefore is that as criminal libel is not an infamous crime the constitutional provision relied on does not require a prosecution for that offense to be by either indictment or information.

It is further insisted by respondent that the former police court of Oakland originally created under the Whitney Act was abolished by the adoption of the charter of Oakland in 1911. The claim is that a freeholders' charter created after the adoption in 1896 of sections 6 and 8½ of article XI of the constitution—the one relative to "municipal affairs" and the other authorizing such charters to provide "for the . . . jurisdiction of police courts"—eliminated "all special acts" or so-called "general acts" (as petitioner designates them), passed previous to said charter adoption and applying to police courts of cities. But the Whitney Act and the further act of 1901, vesting jurisdiction in police courts of cities of the second class, within which the city of Oakland is embraced, are not special acts nor so-called general acts but are, as declared in *People* v. *Henshaw*, 76 Cal. 436, [18 Pac. 413], general laws. They do not interfere in "municipal affairs" which, as far as jurisdiction in police courts is concerned would apply only to the violation of municipal ordinances. Nor do they interfere with or control the proper exercise of such power as may have been conferred under section 8½ of the constitution. These acts deal with state affairs; the prosecution of offenses under the state law, jurisdiction over which is thereby vested in such courts under general laws. The trial and punishment of such offenses is not a municipal affair. What section 8½ means is that as to criminal offenses such as violations of municipal ordinances the framers of a charter have the exclusive right to provide for, but such a

provision is not to be construed as authorizing such charters to confer upon their police courts jurisdiction over offenses of every character. Such a construction would permit them to vest in such courts jurisdiction over all offenses, felonies and misdemeanors. This, of course, may not be done. But there is nothing in these constitutional provisions precluding the legislature under a general law from investing such police court with jurisdiction over criminal offenses made such by the state law as was done under the Whitney Act and the other acts referred to.

The writ is dismissed and petitioner remanded.

Melvin, J., Angellotti, J., Sloss, J., Shaw, J., and Henshaw, J., concurred.