[No. 20586.   In Bank. — January 1, 1890.]

Ex parte AH YOU, on Habeas Corpus.

Police Court of Oakland — Constitutional Law — Municipal Corpora-
tions — Subjection to General Laws. — The police court established
by the freeholder's charter of Oakland has no legal existence.  The police
court established by the act of 1866 was abolished by the general act of
March 18, 1885, to provide police courts in cities having thirty thou-
sand and under one hundred thousand inhabitants, by virtue of section
6 of article 11 of the constitution of 1889, making municipal corpora-
tions subject to general laws, and by virtue of the same section of the
constitution, the freeholders' charter since adopted is also subject to the
same general act.  Fox, J. dissenting.

Application for a writ of *habeas corpus*.   The facts are
stated in the opinion of the court.

*M. C. Chapman*, and *E. C. Chapman*, for Petitioner.

*George W. Reed, John R. Glascock, Warren Olney, E. J.
Pringle*, and *J. E. McElrath*, for Respondent.

*Harvey S. Brown, amicus curiæ.*

The Court.—This is a proceeding upon *habeas corpus*.

The facts out of which the case arises are stipulated as
follows: —

"1.  That on the fourteenth day of February, 1889, a
charter (framed and adopted in accordance with consti-
tutional amendment No. 16, approved March 10, 1887,

statutes of 1887, page 88) became and ever since has been and now is the organic law of the city of Oakland.

"2. That at a municipal election duly and regularly held in the city of Oakland, under the provisions of said charter, one Alexander Laidlaw received certain votes, being a majority of all the votes cast for police judge, was thereafter by the municipal council of the said city of Oakland declared elected police judge of the police court provided for in said charter. Thereupon the said Alexander Laidlaw filed a bond as such police judge, as required by the said charter, took the oath of office, and has ever since been and now claims to be the police judge of the police court provided for in said charter.

"3. That on the twenty-fourth day of July, 1889, the said Ah You was brought before the said police court, so as aforesaid created and organized, and before the said Alexander Laidlaw, so as aforesaid claiming to be judge thereof, and was by said court and judge tried and convicted of a misdemeanor, and thereafter, on the said twenty-sixth day of July, 1889, was, by the said court, and by the said judge thereof, sentenced to imprisonment in the city jail of the said city of Oakland for the period of six months, and adjudged to pay a fine of five hundred dollars, and under commitment issued from said court by said judge thereof was and is imprisoned in said city jail.

"4. That said police court, and said judge thereof, derive whatever of power, jurisdiction, or authority they or either or both of them possess solely or wholely from and pursuant to the provisions of the said charter of the said city of Oakland.

"5. That said police court, established, organized, existing, and set in operation under and in pursuance of the provisions of said charter, is not a police court provided for or existing and in pursuance of the general act of March 18, 1885; and said Alexander Laidlaw, the police judge aforesaid, is not now, and never has been, either a

judge *de jure* or *de facto* of any police court established or organized under and in pursuance of said act of March 18, 1885, in said city of Oakland."

These being the facts, the only question to be decided is, whether the police court established by the freeholders' charter of the city of Oakland (see appendix to Stats. 1869, p. 535) has a legal existence. If it has no legal existence, it is conceded that its judgment is void, and that the petitioner must be discharged.

The city of Oakland was a municipal corporation prior to the adoption of the constitution of 1879. It had a police court established by act of March 10, 1866. (Stats. 1865–66, p. 193.)

Section 6 of article 11 of the constitution of 1879 is as follows: —

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

March 18, 1885, the legislature passed an act entitled " An act to provide for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and to provide for officers thereof." (Stats. 1885, p. 213.) By this act it was provided that one of the city justices, to be designated by the mayor, should be the judge of the police court, and the powers and the jurisdiction of the court were prescribed and regulated. Notwithstanding the passage of this act, a police judge

(Daniels) was elected under the provisions of the act of 1866, and he assumed and undertook to exercise the duties of the office upon the theory that the act of 1885 was unconstitutional, or if constitutional, that it did not supersede the act of 1866, that act being, as it was contended, a part of the old city charter, and as such exempt from the operation of any special or general law relating to the government of municipal corporations. At the same time one Henshaw claimed to be police judge by virtue of the provisions of the act of 1885.

In this state of the case, an action, entitled *People ex rel. Daniels* v. *Henshaw*, was instituted for the purpose of testing the right to the office, wherein it was held by this court (76 Cal. 436) that the act of 1885 was a general law, was in all respects constitutional, that it repealed the act of 1866, and in so far superseded the old charter of the city of Oakland.

If that case was correctly decided,— if the old charter was superseded by the law of 1885,— there can be no question that the freeholders' charter since adopted is also subject to the same act.

The last clause of section 6 of article 11 of the constitution will admit of no other construction. "Cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

The freeholders' charter of Oakland was "framed and adopted by authority of this constitution" (art. 11, sec. 8, as amended), and is not only subject to and controlled by general laws, "according to the express terms of section 6 of article 11, but was also required by the section (8), in pursuance of which it was framed, to be consistent with and subject to the constitution *and laws* of this state."

There is, therefore, no escape from the conclusion that if the old charter was superseded by the act of 1885 the new charter is subject to and controlled by it, and the

police court which the freeholders' charter attempted to establish must be held to have no legal existence unless we are prepared to squarely overrule the decision in *People* v. *Henshaw, supra.*

This is conceded by counsel for respondent, and we are asked to review and reverse that decision. The court, however, has decided to abide by the conclusions there announced, for the reasons and upon the considerations there stated.

It follows that the prisoner must be discharged, and it is so ordered.

Fox, J., dissenting.—I dissent. I think the court erred in its decision in the case of *People* v. *Henshaw,* 76 Cal. 436, and that the decision in that case ought to be reconsidered. No property rights have grown up under it, and no injury can result from a correction of the error then made, if it was an error. The act of the legislature then under consideration,—"an act to provide for police courts in cities having thirty thousand and under one hundred thousand inhabitants, and to provide for officers thereof," approved March 18, 1885, commonly called the "Whitney bill" (Stats. 1885, p. 213),—was at the time of its passage as clearly a special law as any ever passed by a legislative body, and under the constitution should have been declared void.

But whether that decision was right or wrong as the laws then stood, it is to my mind most clear that the act then under consideration is not now a law of the state applicable to the city of Oakland. At that time the city of Oakland was a municipality existing under special act passed long before the adoption of the present constitution; and if the "Whitney bill" was a general law, the charter was subject to amendment, and was amended by such general law, according to the interpretation which has several times been given to the constitution by this court.

But the city is no longer a municipality under that special charter. Nor is it a municipality organized under general law, as is provided by the constitution may be done. But it is a municipality organized under a charter prepared and adopted by its own people, in a manner specially and expressly provided for in the constitution itself, — a charter approved by the legislature, and made by the constitution itself, when so prepared, adopted, and approved, inviolable at the hands of the legislature, — an instrument which the legislature has no power to alter or amend, either by general or special law. (See Constitution, sec. 8, art. 11, as amended, Stats. 1887, p. 88.) Nothing in that charter is in conflict with the constitution or with the general laws of the state. The legislature by general law has provided for the establishment of police courts in the municipalities of the state, as the constitution provides it may do. (Art 6, sec. 1.) And it has prescribed their jurisdiction. Under and in conformity with such general law the charter has provided for the establishment of a police court in this municipality, and prescribed its jurisdiction, the same as it is prescribed in the general law.

But it is claimed that the legislature may amend the charter by general law, because of the provision found in section 6 of said article 11 of the constitution, which reads: " Cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

It is the duty of courts in construing constitutions to so construe them as to make the different provisions harmonize with each other, and to give force and effect to every part, if it is possible to do so. This provision of section 6 seems at first sight to be in conflict with that provision of section 8 which prescribes how a charter framed and adopted by the people and approved by the legislature may be amended, and of course by so

prescribing a special mode excludes all other modes. But a careful examination of the two provisions, each in connection with its own context and special subject-matter, it seems to me, will enable us to understand the intent and will of the framers of the constitution, and to so construe them as to give force and effect to both provisions, and to do violence to neither.

Section 6 deals with the municipal corporations of the state as it finds them, — organized under special laws,— preserves their autonomy under existing charters, until the people themselves shall elect to change; but says to the people, If you do continue to act under your old charters after general laws are framed under which you may organize, your charters shall be subject to the general laws of the state. It also changes the former rule, and provides that thereafter municipal corporations shall not be formed by special laws, but the legislature shall by general law provide for the incorporation, organization, and classification of such corporations; that when such general laws have been provided, cities and towns theretofore organized may, upon a vote of the people, organize under such general laws; and then follows with the provision which I have above quoted. Not until we reach section 8 is there a word in the constitution from which an inference could be drawn that under any circumstances could a special charter be framed or adopted for any municipality. But when we reach that section we find the constitution itself making a provision which it has forbidden the legislature to make,— a provision for special charters for municipalities having a population of ten thousand or more, and in it has specially provided the only mode for their amendment. So that now municipalities have the option to organize under general law, and leave the law of their organization subject to such amendment as the legislature may from time to time see fit to make applicable to all corporations so organized, or under a special law framed

and adopted by their own people, and which, while at the time of its adoption, and at all subsequent times, it must be subject to such general laws as affect the people of the state at large, can only be amended in the matter of local government as they themselves shall see fit to amend it.

In my judgment, the words "shall be subject to and controlled by general laws" refer to such general laws as affect all the people of the state,—such as the laws relative to crimes and punishment; jurisdiction and methods of procedure in the courts; the laws affecting rights and remedies, and the like,—and not to those provisions pertaining specially to the administration of local affairs.   If there is any one thing more manifest than another in this constitution, it is an intent to commit to the people of municipalities the management of their own local affairs, but in such form as not to interfere with or create confusion in the administration of the general laws of the state.

But, above and beyond this, the question discussed in the leading opinion, and so far discussed in this, does not arise in this case, except as it is forced upon us by an attempt to stipulate for the court what the law is, as well as the facts of the case.   It is not necessarily true, as stated in the stipulation, that the powers and jurisdiction of the police court are derived from the charter proposed and adopted by the people.   Even under the act of 1885 referred to, and under any and every law that can be referred to bearing on the question, provision is made for a police court in such a municipality having the same jurisdiction as that provided for in the charter. It follows that, in any event, and under any law that can be cited in the premises, there is a *de jure* police court in that city, and the case simply resolves itself into an attempt to procure a judgment of this court, in a case of *habeas corpus*, as to the validity of certain provisions of the charter of Oakland, involving the title of Alexander

Laidlaw to the office of police judge. The question ought not to be determined upon *habeas corpus*, and it is not necessary that it should be. There being a *de jure* court, even if Laidlaw is an intruder, there does not appear to be any other person claiming the office, and his acts as judge *de facto* are as valid and binding upon third parties as if he held by strict law. (*Westbrook* v. *Roseborough*, 14 Cal. 180.) For this, if for no other reason, the writ in this case should be dismissed, and the prisoner remanded.