## PEOPLE v. TOAL.*

### No. 20,610; February 1, 1890.

#### 23 Pac. 203.

Inferior Courts—Manner of Establishing.—Constitutional article 6, section 1, provides that "the judicial power of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may establish in any incorporated city or town, or city and county." Section 13 provides that the legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1, and shall fix by law the powers, duties and responsibilities of the judges thereof. Held, that an inferior court can be established only by the passage of an act of the legislature, and its approval by the governor, or its passage over his veto, in the same manner as any other law is enacted under constitutional article 4, sections 15, 16.[1]

Police Courts—Manner of Establishing.—Laws of 1887, pages 88–90 (Constitutional 16th Amend., amending article 11, section 8), provides that any city of more than ten thousand, and not more than one hundred thousand inhabitants may frame a charter for its own government "consistent with and subject to the constitution and laws of the state," and, if ratified by a majority of the qualified voters of the city, it shall be submitted to the legislature for its approval or rejection as a whole and, if approved ·by a majority vote of the members elected to each house, it shall become the charter of such city, and the ·organic law thereof, and "shall supersede any existing charter, and any amendment thereof, and all special laws inconsistent with such charter." Held, that this does not dispense with the requirements of constitutional article 6, section 13, and that the provisions of a charter establishing a police or inferior court in such city which depend alone for their validity on a joint resolution of approval of the charter by a majority of the members of the legislature, but in no way submitted to or passed on by the governor, are unconstitutional, and the acts of such court are void.

Fox, J., dissenting.

APPEAL from Superior Court, Los Angeles County; J. W. McKinley, Judge.

*For subsequent opinion in bank, see 85 Cal. 333, 24 Pac. 603.

[1] Cited in Ex parte Reilly, 85 Cal. 632, 24 Pac. 807, in which it is stated that the decision intimated that the "so-called Whitney act . . . . applied to the city of Los Angeles."

Wm. T. Williams and Horace Bell for appellant; Attorney General Geo. A. Johnson for the people.

FOOTE, C.—The defendant was convicted of an assault with intent to commit murder. From the judgment of conviction, an order overruling his motion in arrest of judgment, and an order denying his motion for a new trial he appeals. The order overruling the motion in arrest of judgment is not itself appealable by the defendant, but may be reviewed on his appeal from the judgment: People v. Majors, 65 Cal. 100, 3 Pac. 401.

The main point relied on by the defendant seems to be that the police court of the city of Los Angeles, before the judge of which his preliminary examination was had, and by whose order he was committed for trial before the superior court of Los Angeles county, was not a legal court; that the judge thereof was not authorized by the constitution of the state to perform any function whatever as a committing or other magistrate. The defendant made a motion in due time that the information be set aside upon the ground that before the filing thereof he had not legally been committed by a magistrate, under section 995 of the Penal Code. If in fact he was not legally committed by a magistrate, the point made is well taken: People v. Shem Ah Fook, 64 Cal. 382, 1 Pac. 347; Kalloch v. Superior Court, 56 Cal. 229.

In support of his contention the defendant declares that the provisions of the charter of the city of Los Angeles, under and by virtue of which L. Stanton, the police judge, who sat as committing magistrate in his case, was elected and claims to exercise the functions of a magistrate, are in violation of article 6, section 1, of the state constitution; that the joint resolution under which that charter was adopted by the legislature as a whole, to be found in acts of 1889, page 512, was without force and effect so far as it concerned the establishment of a police court in said city. That resolution, omitting the preamble and charter which precede it, reads as follows:

"Resolved, by the senate of the state of California, the assembly thereof concurring, (a majority of all the members elected to each house voting for and concurring herein,) that said charter be, and the same is hereby, approved as a whole for and as the charter of said city of Los Angeles."

Was this a proper legislative method of enacting a law which would establish a legal inferior court, such as article 6, section 1, of the state constitution warrants? That section of the above-named article reads thus: "The judicial power of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may establish in an incorporated city or town, or city and county." It is conceded by the appellant that the supreme court of California, in Brooks v. Fischer, 79 Cal. 173, 5 L. R. A. 429, 21 Pac. 652, has held that the charter above referred to was legally adopted, and valid in most of its provisions, but that as to the particular provisions which bring into existence a police court, and invest it with the functions of a committing magistrate, that there has been no adjudication of their validity. Section 13 of article 6 of the state constitution is: "The legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties, and responsibilities of the judges thereof." It seems clear from the language used in these constitutional provisions that it was the intention of those who framed that instrument, in establishing inferior courts, such as the one under consideration, to declare that it must be done by the passage of an act of the legislature, and its approval by the governor, or, upon his veto thereof, must be passed again by two-thirds of the members of each house voting therefor, and must become a law in the same manner as any other law is to be enacted under sections 15 and 16, article 4, of the constitution; and this method of procedure must prevail in all cases, unless a different rule is established, pertaining to the bringing into existence of inferior courts, under provisions of charters, such as that of Los Angeles. This difference can only exist, if it be authorized at all, by the sixteenth amendment to the state constitution, amending the eighth section of article 11 of the constitution, to be found in Laws of 1887, pages 88–90. The portion of it applicable here is as follows:

"Any city containing a population of more than ten thousand, and not more than one hundred thousand inhabitants, may frame a charter for its own government, consistent with and subject to the constitution and laws of this state, by

causing a board of fifteen freeholders, who shall have been for at least five years qualified electors thereof, to be elected by the qualified voters of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board, or a majority of them, and returned, one copy thereof to the mayor or other chief executive of said city, and the other to the recorder of the county. Such proposed charter shall then be published in two daily papers of general circulation in such city for at least twenty days; and the first publication shall be made within twenty days after the completion of the charter; and within not less than thirty days after such publication it shall be submitted to the qualified electors of said city, at a general or special election, and if a majority of such qualified electors voting thereat shall ratify the same, it shall thereafter be submitted to the legislature for its approval or rejection as a whole, without power of alteration or amendment; and if approved by a majority vote of the members elected to each house it shall become the charter of such city, and the organic law thereof, and shall supersede any existing charter, and any amendments thereof, and all special laws inconsistent with such charter."

Does this amendment to the constitution of 1879, as to such courts as the one in hand, which the Los Angeles charter seeks to establish, supersede the provisions of the constitution, which were existent at the time of its ratification, and which we have heretofore cited? If not, then the establishment of the police court, the judge of which acted as an examining magistrate in this case, was without due form of law, and the court thus attempted to be established does not exist, its acts are void, and the defendant was not legally committed by a magistrate. We do not think, in so important a matter as this, viz., the changing of the form by which inferior courts shall be established by law in cities of the class to which Los Angeles belongs, that the sixteenth amendment, supra, should be held to have so far-reaching an effect, and that in this way the important provisions of the constitution, which before its passage existed, should be held to be struck dead. Again, the amendment declares that if such a charter is "approved by a majority vote of the members elected to each house it shall

become the charter of such city, and the organic law thereof, and shall supersede any existing charter, and any amendments thereof, and all special laws inconsistent with such charter." Thus the idea kept constantly in view is that the charter must be consistent with and subject to the existing constitution, and all general laws, but that any preceding charter or amendment, or special laws inconsistent with the charter are to be superseded by the approval of the legislature alone. In other words, the force and effect of the sixteenth amendment, supra, as applied to charters of cities containing over ten and under one hundred thousand inhabitants is this: That such charters may be framed in the manner prescribed by the amendment, and, if ratified by the majority of the qualified voters of the city to which it is to apply, shall be submitted to the legislature for its approval or rejection as a whole, without power of alteration or amendment, and if approved by a majority vote of the members elected to each house it shall become the charter of such city, and the organic law thereof, and shall supersede any existing charter, and any amendment thereof, and all special laws inconsistent with such charter, but that such charter must be consistent with and subject to all constitutional provisions then in force, and all general laws. Is it permissible to declare that the provisions of a charter establishing a police or inferior court in a city of over ten and under one hundred thousand inhabitants, which depend alone for their validity upon a joint resolution of approval of the charter by a majority of the members of the legislature, but not in any way approved by, submitted to, or passed on by the governor, are consistent with or subject to the constitutional provisions and general laws in existence at the time of the ratification of the sixteenth amendment, supra, which constitutional provisions prescribe a different method for the establishment of such a court as the charter provisions bring into existence. And can a constitutional amendment which contains such limitations as those existing in the sixteenth amendment, supra, be said to supersede the necessity of establishing an inferior court in the manner which the prior sections of the constitution point out as proper? We do not think that the sixteenth amendment is susceptible of the construction claimed for it; and we are of opinion that it plainly declares to the contrary, viz., that

all existing constitutional provisions, and general laws in force at the time of its adoption are continued in full force and effect, and control any such charter. And this view is strengthened when we come to consider section 6, article 11, in reference to corporations, which concludes in these words: "And all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws." If the whole charter had been duly passed by the legislature, and approved by the governor, or passed over his veto, and in all respects taken the ordinary form of legislative enactment under the constitution (sections 15 and 16, article 4), we are not prepared to say, if no general law upon the same subject had remained in force, but that a police or other inferior court thus established would be within the terms of the constitutional provisions above adverted to.

There is another feature connected with the matter in hand, which, although not urged, is yet, under the circumstances, of such importance as to deserve at least passing mention. It is a well-known fact, as we think, not only, as it appears from the preamble of the resolution adopting the charter of Los Angeles, that it is a city of more than ten and under one hundred thousand inhabitants, but that it is a city of more than thirty and under one hundred thousand inhabitants. If this is so, then the portion of the charter objected to on the ground heretofore stated is also unconstitutional in another point of view, in this, that it is obnoxious to the so-called "Whitney act," which is adverted to by the appellate court in the lately decided bank case, In re Ah You, 82 Cal. 339, 22 Pac. 929 (No. 20,586). It was there decided that the freeholders' charter of the city of Oakland, a city of the same class with Los Angeles, was subject to the provisions of the act above mentioned, the same being held a "general law," and to be found in the Statutes of 1885, page 213, and that the police court established by that charter had no existence, and no jurisdiction to try misdemeanors, or any other offense known to the law. It follows, therefore, as it seems to us, that the police judge of Los Angeles had no jurisdiction or authority as an examining and committing magistrate, and that there was no authority of law for filing the information against the defendant; and therefore his motion to set aside the informa-

tion should have been granted. We therefore advise that the judgment and order be reversed.

I concur: Gibson, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.

PATERSON, J., Concurring.—It will be conceded, I presume, that the city of Los Angeles is a municipal corporation, having thirty thousand and under one hundred thousand inhabitants. The judicial power of the city, therefore, is vested in a police court, "to be held therein by the city justices, or one of them, to be designated by the mayor." Whether such power is conferred by the act of March 18, 1885, known as the "Whitney act" (Stats. 1885, p. 213), or by the act in relation to municipal corporations of the second class (Stats. 1883, p. 200), it is unnecessary to inquire, because under both acts it is made the duty of the mayor to designate a justice of the peace to hold said police court. The city is not in consequence of this decision left without a court for the punishment of misdemeanors, and examination into the commission of felonies within the city limits. Being a city having thirty thousand and under one hundred thousand inhabitants, we have to presume, in the absence of anything in the record to the contrary, that the mayor has performed the duty required of him by the act of March 18, 1885, and designated a justice to hold the police court; and we have to presume, further, that such justice is in the actual discharge of his duty as ex officio judge of the police court.

It is said by respondent herein that Stanton's title to his office cannot be tried in this collateral proceeding; that he is at least a de facto officer, performing the duties of his office, and claiming to have been elected thereto in accordance with law. This point raises the most serious question in the case, and, if it were not for the statement in the record, that "the defendant had been examined and held to answer by L. Stanton, Esq., judge of the police court of Los Angeles city, the said police court having been authorized by the legislature of said state, to wit, senate resolution No. 2, approving the charter of the said city of Los Angeles, adopted January 31, 1889, and the said L. Stanton having been elected judge of

said court under and by virtue of said charter, and was so acting by virtue of his said election," I should consider the contention sound. This statement, however, shows that the defendant was held to answer in a judicial tribunal that has no lawful existence, namely, a police court organized under the charter of the city of Los Angeles, sanctioned by the legislature under senate resolution No. 2, and presided over by one who was elected judge of said court under and by virtue of said charter, and was so acting by virtue of his said election. While it is true that the acts of a de facto officer, acting in a de jure tribunal, cannot be questioned, we have here a case in which there is neither a court nor an officer authorized by law; and, as stated before, we must presume that the court authorized by the statute is in existence, and presided over by a justice duly appointed by the mayor. In In re Ah You it was admitted that if the police court established by the freeholders' charter of the city of Oakland had no legal existence its judgment was void, and that the petitioner should be discharged. Perhaps, if such admission had not been made in that case, this court would have been bound to consider Laidlaw a de facto judge, and his acts valid and binding, there being nothing outside of said admission to show that he was acting solely under the authority of the charter and by virtue of his election as a police judge. That case decided that the new charter of Oakland is subject to and controlled by the act of 1885, so far as the police court is concerned, and that decision, under the facts admitted in this case, is conclusive upon the question as to the right of the defendant to his discharge.

FOX, J.—I dissent. Conceding all that is said in the opinion of the commissioners as to the unconstitutionality of that portion of the charter of Los Angeles which provides for the establishment of a police court, and the jurisdiction thereof, I cannot admit that that city is left without a court for the punishment of misdemeanors, and for examination and inquiry into the commission of felonies within its borders. It is conceded in said opinion that the "Whitney act," so called, is a general law applicable to the city of Los Angeles. Even if that be not true, the city is still not left without law and without a police court with jurisdiction ample for in-

quiry into and commitment for offenses such as are charged against this defendant. In the absence of a constitutional provision in the charter, and of the "Whitney act," there is still a general law for the establishment and government of municipal corporations, which establishes a police court in cities of this class, and defines their powers and jurisdiction the same, so far as relates to this case, as the jurisdiction exercised in the examination and commitment of this defendant: See Stats. 1883, p. 200. The magistrate who presided at this examination, and made this commitment, even if not lawfully entitled to hold the place, was presiding in a de jure court of competent jurisdiction, and was himself the de facto judge thereof. His acts and judgments as such are as valid and binding, as to third persons, as though he held the office by strict law: Westbrook v. Rosborough, 14 Cal. 180.