THE PEOPLE, RESPONDENT, *v.* FRANK TOAL, AP-
PELLANT.

CONSTITUTIONAL LAW — ESTABLISHMENT OF INFERIOR COURTS — POWER OF
LEGISLATURE. — The jurisdiction, powers, duties, and responsibilities of
the inferior courts established by the legislature under article 6 of the
constitution must be provided for and fixed by a bill regularly passed
through the stages necessary to constitute it a law, as provided in sec-
tions 15 and 16 of article 4 of the constitution; and the courts cannot be
established by any less formal means, but must be established by the law-
making power, including the governor, and by laws passed and approved
as provided by the constitution. (BEATTY, C. J., and PATERSON, J., dis-
senting.)

ID. — APPROVAL OF MUNICIPAL CHARTER. — A provision in a municipal
charter, adopted by a mere resolution of approval, establishing inferior
courts in the city adopting the charter, and giving them jurisdiction, is
not an exercise of the law-making power of the legislature, and is uncon-
stitutional. (BEATTY, C. J., and PATERSON, J., dissenting.)

ID. — JURISDICTION OF POLICE COURT — INVALID CONVICTION — APPEAL. —
Where the police judge who committed a defendant for a criminal offense
was neither elected to nor claims to be holding any other office than the
one attempted to be established by the resolution of the legislature ap-
proving a municipal charter, the defendant may on appeal from the judg-
ment present the question as to whether or not the police court committing
him was legally established.

ID. — DE FACTO OFFICER — JUDGE OF ILLEGAL COURT. — Though the action
of a *de facto* officer to hold an existing office cannot be questioned col-
laterally, this principle does not apply when the office does not exist.
There cannot be a *de facto* judge of a court that has no legal existence.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*William T. Williams, Horace Bell,* and *Stephen M.
White, amicus curiæ,* for Appellant.

*Attorney-General Johnson, Frank P. Kelly,* District At-
torney, *M. T. Owens,* and *L. Stanton,* for Respondent.

WORKS, J. — The appellant was convicted in the court
below of an assault to commit murder. From the judg-
ment, and an order denying him a new trial, he appeals.

The judgment was reversed by this court (*People* v. *Toal*, 23 Pac. Rep. 203), and a rehearing granted. It was urged upon us in the petition for a rehearing that the effect of the decision was to oust the police judges of the city of Los Angeles from office without a hearing. Upon the second hearing, the police judges, as well as the attorneys in the case, and at least one *amicus curiæ*, were allowed to be heard, orally and by printed briefs, and the subject seems to have been thoroughly exhausted. There are but two questions presented for our consideration by this second presentation of the case, viz.: 1. Was the police court of the city of Los Angeles attempted to be established by the new freeholders' charter of said city a valid and existing court at the time the judge, or pretended judge, thereof committed the appellant for trial? 2. Can the question of the validity of said court be presented by the appellant in this way, or must the same be raised by a direct proceeding for that purpose? The point is made by the respondent that this court has already determined the first of these questions in the affirmative in the two cases of *Brooks* v. *Fischer*, 79 Cal. 173, and *Ex parte Strand*, 21 Pac. Rep. 654. But the question now before us was neither presented nor considered in either of those cases. *Brooks* v. *Fischer* was brought to determine the general question whether or not the charter of the city was legally adopted. There was some doubt in the minds of counsel having that matter in charge whether the course taken in *Brooks* v. *Fischer* was the proper one to raise the question, and for that reason the application in *Ex parte Strand* was made for the sole purpose of raising the same question, and none other was presented. This court regarded the remedy pursued in the former of these cases as the proper one, and decided the question raised in that case. Therefore *Ex parte Strand* was decided as presenting the same point, and the writ in that case was denied on the authority of the former one, and without further consideration.

And in *Brooks v. Fischer,* we were careful to say, in effect, that we were simply passing upon the general question as to the proper manner of adopting the charter, and not upon the question as to the validity of any of its provisions. Thus it was said: "It is contended by the petitioner that certain provisions of the charter are inconsistent with existing general laws, and particularly that it is in conflict with the general law with reference to the improvement of streets. It may be that certain of its provisions are inconsistent with present laws, and that so far it cannot be effective as against such laws, but this is a matter that it is unnecessary for us to determine. It is enough to say that the whole charter cannot be held to be invalid because of the fact that a few of its provisions may conflict with general statutes now in force." It must be seen, therefore, that nothing was decided in either of the cases referred to which precludes us, as an authority in point, or otherwise, from determining the question now before us, which is, whether one of the provisions of the charter is invalid as in conflict with existing laws. These cases decided that the charter of Los Angeles, as a whole, was adopted in the proper manner, and nothing more.

1. The question now before us is, whether an inferior court can be established by a mere resolution of the legislature not acted upon by the governor because such court has been provided for in a charter adopted as provided by section 8, article 11, of the constitution. Section 1 of article 6 of the constitution relates exclusively to the establishment of courts, and provides: " The judicial power of this state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may establish in any incorporated city or town, or city and county."

There may be *" such inferior courts as the legislature may establish."* The material question here is, *How* may

the legislature establish these courts? Counsel for the appellant contend that it must be by a law regularly passed through the various stages required by the constitution and approved by the governor, or passed as the law requires without his approval. On the other hand, it is contended by the respondent that the section of the constitution referred to does not provide how the legislature shall establish such courts, and therefore they may be established by the adoption of a charter of a city as provided by article 11, section 8, of the constitution. There are other sections of the constitution which throw some light upon this question if it needs illumination. Section 13 of article 6 provides: " The legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties, and responsibilities of the judges thereof." In this section the legislature is authorized to fix *by law* the jurisdiction of any inferior courts which may be established *in pursuance of section 1,* above quoted. There is no authority given to fix the jurisdiction, powers, duties, and responsibilities of inferior courts established in any other manner, and this must be done *by law.* Section 15 of article 4 provides how all laws shall be passed: " No law shall be passed except by bill. Nor shall any bill be put upon its final passage until the same, with the amendments thereto, shall have been printed for the use of the members; nor shall any bill become a law unless the same be read on three several days in each house, unless, in case of urgency, two thirds of the house where such bill may be pending shall, by a vote of ayes and noes, dispense with this provision. Any bill may originate in either house, but may be ⁀amended or rejected by the other; and on the final passage of all bills, they shall be read at length, and the vote shall be by ayes and noes upon each bill separately, and shall be entered on the journal, and no bill shall become a law without the con-

currence of a majority of the members elected to each house."

Section 16 of the same article provides what shall be done after its passage before it shall become a law.

It is too clear for argument that so far as the jurisdiction, powers, duties, and responsibilities of these inferior courts are concerned, they must, by the express terms of the constitution, be provided for and fixed by a bill regularly passed through the stages necessary to constitute it a law, as provided in sections 15 and 16 of article 4 of the constitution. If so, can it be said, with any degree of reason, that it was the intention of the framers of the constitution that such courts might be established by any less formal means, as, for example, by a resolution adopted by the two houses of the legislature, after but one reading, and without any action on the part of the governor? We cannot think so. When it was provided that courts should be established by the legislature, it was undoubtedly meant that they should be established by the law-making power, including the governor, and by laws passed and approved as provided by other sections of the constitution. That such courts are properly established in this way has been decided by this court. (*Ex parte Jordan*, 62 Cal. 464; *Ex parte Lloyd*, 78 Cal. 421.) Section 8 of article 11 of the constitution does, not, and was not intended to, change or in any way alter the specific provisions relating to courts. The provision in that section, that the charters authorized thereby to be framed and adopted must be " consistent with and subject to the constitution and laws of this state," makes it clear that nothing of the kind was intended. A provision in a charter, adopted by mere resolution of approval, and not by law, establishing inferior courts, and giving them jurisdiction, is clearly in conflict with the constitutional provisions above referred to providing how courts shall be established and given jurisdiction.

But it is urged upon us, by one of the gentlemen who

claims to be a police judge under this charter, that dire consequences will result from a decision by us that this court was not legally established; the city of Los Angeles will be deprived of its police court, criminals will escape justice, and the gentlemen claiming to be judges of said court will be responsible for acts done by them as such judges without legal authority. We are too firmly convinced of the correctness of the conclusion we have reached to be affected or influenced by the fear of consequences. Beside, in our judgment, the consequences likely to result from this decision cannot be *so serious as to allow* that courts of justice, however inferior, may be established in the informal and loose way contended for by the respondent. The city of Los Angeles is amply provided with inferior courts, without its police court, and to be relieved of the unnecessary expense of maintaining it should not be seriously complained of; the criminals that will escape justice by the conclusion we have reached must be few in number, and the emoluments of the office to which they were not entitled will probably compensate the judges for all liabilities incurred by them by reason of having acted without authority of law.

2. But conceding that the police court of Los Angeles was not legally established, it is further contended that the fact cannot avail the appellant in this case; that whether it was or not, the pretended judge thereof was a *de facto* judge, and his right to the office, or his power and jurisdiction, cannot be questioned in this collateral way, but must be raised by a direct action for that purpose. We think this point would be well taken if this were an attempt to test the right of some one to hold an existing office. (*Hull* v. *Superior Court*, 63 Cal. 174–179; *Buckner* v. *Veuve*, 63 Cal. 304; *Fraser* v. *Freelon*, 53 Cal. 647.) But the question presented here is not as to the right of a particular person to hold an existing office. There cannot be a *de facto* judge of a court that has no existence. We are very clear, therefore, that the appel-

lant has the right to present the question on this appeal, and that it is our duty to determine it; and if such results are likely to follow as the respondent claims, it is better that it should be determined speedily. It cannot be claimed that the pretended judge who committed the appellant was elected to or claims to be holding any other office than the one attempted to be established by the resolution approving the charter of Los Angeles.

The grounds upon which the appellant moved to set aside the information were as follows: —

" 1. That before the filing thereof the defendant had not been legally committed by a magistrate.

" 2. That the information herein purports to be filed upon a pretended examination of one L. Stanton, who falsely and illegally pretended to be a judge of a pretended police court of the city of Los Angeles.

" 3. That the said pretended police court of Los Angeles has no legal existence under the constitution and laws of this state.

" 4. That said L. Stanton is not, and was not at the time of said pretended examination of the defendant, a magistrate who had power or authority to examine the defendant in respect to the matter charged in this information."

These objections raised not only the question as to the right of Stanton to hold the office, but as to the existence of the office. And the bill of exceptions shows his only claim to hold office was by virtue of the resolution referred to. It recites: —

" That, theretofore, to wit, on the twenty-first day of May, 1889, the said information was filed in department number one of said court, upon the defendant having been examined and held to answer by L. Stanton, Esq., judge of the police court of Los Angeles City; the said police court having been authorized by the legislature of said state, to wit, senate resolution No. 2, approving the charter of the said city of Los Angeles,

adopted January 31, 1889; and the said L. Stanton having been elected judge of said court under and by virtue of said charter, and was so acting by virtue of his said election."

As against this statement in the bill of exceptions, the claim of the respondent, that he may have been judge of a police court established by a general law, cannot be maintained. We cannot disregard the plain recitals in the bill of exception, and evade the real question in the case in the way suggested by counsel.

Judgment and order reversed.

McFarland, J., Sharpstein, J., and Thornton, J., concurred.

Fox, J., concurring. — In view of the recital from the bill of exceptions, above quoted by Mr. Justice Works, I am constrained to concur in the judgment. This is not a mere assertion or stipulation of counsel as to what the law is; but here it is certified by the court, as a fact in the cause, that the police court in which the defendant had his only preliminary examination is *the* police court authorized (established) "by senate resolution No. 2, approving the charter of the said city of Los Angeles," and that said Stanton was elected *judge of said court,* and was acting *by virtue of such election.* On facts so certified this court cannot do otherwise than hold that the police court of which said Stanton was acting as judge had no legal existence, and consequently that there could be no judge thereof either *de jure* or *de facto.*

While a municipal charter framed, adopted, and approved as provided in article 11, section 8, of the constitution, is a *law* of the highest order, — one established by the people direct, and by the authority of the constitution, — "the organic law" of the municipality, superseding "any existing charter, and any amendments thereof, *and all special laws inconsistent with such charter,*

and is by the constitution itself protected from the encroachment of legislative enactment, it is *valid* law only so far as its provisions are kept within the limitations prescribed by the constitution. It is *invalid* whenever and in so far as it undertakes to establish courts of justice; for the same constitution which authorizes its adoption has prescribed that the judicial power of the state shall be vested in certain courts named in that instrument, "and in such inferior courts as the *legislature* may establish in any incorporated city or town, or city and county." (Art. 6, sec. 1.) Thus it will be seen that it is not appointed for the people of municipalities to establish courts. These, where not established by the people through the constitution, can be established by the legislature only. It can establish them only by the passage of appropriate laws; and it can pass no law except by bill, and in the manner prescribed by article 4, sections 15 and 16, of the constitution.

BEATTY, C. J., dissenting. — I dissent. It would serve no useful purpose to enter upon an elaborate presentation of the views which have led me to a conclusion opposed to that of the court, but the point decided is so important that the occasion seems to justify a brief statement of the grounds upon which, in my opinion, that portion of the charter of Los Angeles establishing a police court should be held valid and operative.

I think that the framers of the constitution, in adopting the provisions of section 8 of article 11, intended to confer upon cities the power to frame and adopt charters which should be whole and complete. A municipal court of some sort was generally, and I believe universally, a part of all city charters in California before, and has been since, the adoption of the new constitution. A municipal charter containing no provision for a municipal court would be very unusual, to say the least. And so firmly is this idea implanted in the popular and profes-

sional mind, that of the seven or eight freeholders' charters that have been framed since the adoption of the new constitution, not one, I believe, has omitted to provide for a police court. When it is remembered that the boards of freeholders by whom these charters have been framed were largely composed of lawyers of recognized standing and ability, and when it is considered further that in all the litigation which has ensued concerning the rights and jurisdiction of the courts so established, the point has been raised for the first time in this case that it is not competent by a freeholders' charter to create a police court, or endow it with any jurisdiction, it would certainly seem that the proposition ought not to be treated as too plain for argument.

The objection to establishing an inferior court by means of a freeholders' charter is, that such courts must be established by the legislature (Const., art. 6, sec. 1), and their jurisdiction and powers must be regulated by law (art. 6, sec. 13), and no law can be passed except by bill. (Art. 4, sec. 15.)

If the constitution were perfectly consistent in the use of words, this argument would be infallible; but the constitution is not so consistent. At the same time that it says in the section last cited that no law shall be passed except by bill, it expressly provides in another section for the enactment of a particular kind of law by another method. (Art. 11, sec. 8.)

To make the constitution consistent and harmonious as a whole, verbal discrepancies must be disregarded. Section 15 of article 4 must be regarded as the rule for enacting statutes in general, and section 8 of article 11 as the exceptional method of enacting special city charters.

Such charters are *laws.* Since they repeal laws, i. e., pre-existing charters and all special laws inconsistent with them, it cannot be denied that they have the substance, force, and effect of law, and in the constitution

itself they are given the name of laws.  Can it not be said, then, that every requirement of the constitution is satisfied in the creation of a municipal court by such a charter?

The legislature must approve the charter.  Therefore, what the charter establishes the legislature establishes. The charter is a law.  Therefore, the jurisdiction conferred by it is conferred by law.

It is not suggested that any inconvenience has been occasioned or could arise from this view.  It can scarcely be doubted that it accords with the actual intention of the framers of the constitution.  It is certain that it comports with the general understanding hitherto prevailing, and if I am not mistaken, it has been shown not to be in conflict with a fair construction of the terms of those provisions which are supposed to condemn it.

Paterson, J. — I concur in the views of the chief justice.