## PEOPLE v. SANDS.*

### No. 15,369; January 3, 1894.

#### 35 Pac. 330.

Justice of Peace—Vacancies in Office.—City justices of the peace are not township or county officers, and the board of supervisors has no authority to fill vacancies therein.

Justice of Peace—Vacancies in Office.—Although inferior courts in incorporated cities can be established only by the constitution (article 6, section 1), and their jurisdiction, powers, and duties must be fixed by the legislature (constitution, article 6, section 13), still a valid provision for filling vacancies may be made by charter.

Justice of Peace—Vacancies in Office.—Under a charter providing .that the mayor shall appoint suitable persons to fill vacancies in office, he is empowered to fill vacancies in the offices of city justices of the peace.

APPEAL from Superior Court, Alameda County; F. W. Henshaw, Judge.

Action in the nature of quo warranto by the people, on the relation of Fred V. Wood, against John A. Sands. From a judgment for plaintiff, defendant appeals. Reversed.

Davis & Hill for appellant; W H. H. Hart, attorney general, Jas. C. Martin and A. A. Moore for the people.

HAYNES, C.—This is an action in the nature of quo warranto, brought by the people on relation of Fred V. Wood against John A. Sands to try the title of the relator and the defendant, respectively, to the office of city justice of the peace of the city of Oakland. The office became vacant by the resignation of the prior incumbent, and the mayor of the city, acting under the "freeholders' charter," appointed the defendant to fill the vacancy. Sands thereupon qualified and entered upon the duties of said office. The board of supervisors of Alameda county, assuming that the power of appointment to said office was vested in them, appointed the relator to fill the same vacancy, and he also qualified and demanded possession of the office. The cause was submitted in the court

*For subsequent opinion in bank, see 102 Cal. 12, 36 Pac. 404.

below upon an agreed statement of facts, which was adopted as a finding, in which it is conceded that each of these persons possesses all the qualifications required by law, and that the sole question is as to where the power of appointment to fill said vacancy is vested. The superior court held that said power was vested in the board of supervisors, and gave judgment in favor of the relator, Wood, and defendant Sands appeals therefrom.

Appellant contends that a city justice of the peace is a city officer, and that under the charter of the city the mayor is empowered to fill all vacancies in city offices. If a city justice of the peace is a city officer, the provision of the charter is insufficient in its terms to authorize an appointment by the mayor to fill the vacancy. Its language is as follows: ''The mayor shall have the power to appoint suitable persons to fill vacancies in any office, except as in this charter provided'': Stats. 1889, p. 570, sec. 202. The exception does not affect this case. The contention of respondent, briefly stated, is that city justices are not city officers, but are officers designated by the constitution, and exercising a part of the judicial power therein provided for; that, even if the power of appointment to a vacancy is not enumerated in the general permanent powers of the board of supervisors, a general provision gives them such other power, and charges them with such other duties, as are or may be imposed upon them by law; and among these is the power and duty imposed by section 111 of the Code of Civil Procedure, which reads as follows: ''If a vacancy occurs in the office of a justice of the peace, the board of supervisors of the county shall appoint an eligible person to hold the office for the remainder of the unexpired term.'' These provisions, however, cannot be held to give the board of supervisors the power to fill the vacancy in question, if the office of city justice is a city office. Section 103 of the Code of Civil Procedure, as amended by the act of March 31, 1891 (Stats. 1891, p. 456), provides that there shall be at least one justice of the peace in each township, elected by the qualified electors of the township, and gives the board of supervisors authority, when, in their opinion, the public convenience requires it, to establish two justices' courts in townships; and further provides: ''In every city having fifteen thousand and not more than thirty-four thousand inhabitants there shall be

one justice of the peace, and in every city having thirty-four thousand and not more than one hundred thousand inhabitants, two justices of the peace, to be elected in like manner by the electors of such cities respectively, and such justices of the peace of cities, and justices' courts of cities, shall have the same jurisdiction, civil and criminal, as justices of the peace of townships and township justices' courts. No person shall be eligible to the office of justice of the peace in any city having over fifteen thousand inhabitants who has not been admitted to practice law in a court of record. . . . . Every justice of the peace in any city having over fifteen thousand inhabitants shall receive an annual salary of two thousand dollars per annum, and shall be provided by the city authorities with a suitable office in which to hold court. All fees which are by law chargeable for services rendered by such justices of the peace in the cities aforesaid, shall be by them, respectively, collected, and on the first Monday in each month every such city justice of the peace shall make report, under oath of the city treasurer, of the amount of fees so by him collected, and pay the amount so reported into the city treasury, to the credit of the general fund thereof.'' Here it will be seen that not only are different designations given to justices in cities and townships, but that different qualifications are required; that, as to township justices, the board of supervisors have the power to increase the number from one to two, but are charged with no duty, discretion, or power in regard to city justices; that the number and the salary of city justices are definitely fixed by the legislature; that the city must provide suitable places for holding their courts; that the city justices must report to the treasurer of the city, and pay over all fees collected; and by another statute the salary of the justice must be paid by the city. The same distinctive appellation is given in numerous other statutes; as in the municipal government act, sections 390, 397, 402 (Pol. Code, pp. 794, 795); and also by the act of March 18, 1885 (Stats. 1885, p. 213).

In the county government act, approved on the same day as the above amendment of section 103, Code of Civil Procedure, it is declared that "the officers of a township are two justices of the peace, two constables, and such inferior and subordinate officers as may be provided by law or by the board of supervisors; provided that in townships containing cities

in which city justices are elected, there shall be but one justice of the peace'': Stats. 1891, p. 314, sec. 58. It is obvious that the local character of justices of the peace is not denied by any provision of the constitution, while all the statutes relating to their election and jurisdiction characterize them as local officers; and if justices of the peace elected by electors of a township, and exercising their jurisdiction therein, make them township officers, as declared by the foregoing statute, it is difficult to perceive why a justice elected by the electors of a city, and exercising his jurisdiction therein, is not a city officer. The constitution and statutes clearly distinguish between county organizations and governments and city organizations and governments. Each have distinct legislative bodies and executive officers. Nowhere is any duty or authority vested in the board of supervisors over municipal matters or officers, except in the case of consolidated city and county governments.

By still another act, approved March 31, 1891 (Stats. 1891, p. 292), are city justices recognized as city officers. It is there provided that ''the judicial power of every city having thirty thousand and under one hundred thousand inhabitants shall be vested in a police court, to be held therein by the city justices, or one of them, to be designated by the mayor, . . . . and it is hereby made the duty of said city justices, in addition to the duties now required of them by law, to hold said police courts.'' The police court is given by said act exclusive jurisdiction of certain violations of the criminal laws of the state committed within the city, and is also given other powers concerning the violation of the criminal laws of the state, while sitting as a police court; and in a certain class of cities, of which Oakland is one, a clerk is given said court, whose salary is paid by the city, and of whom a bond, to be approved by the mayor, is required; and the city justices, as well as the clerk, are required to report and account to the city; and by section 305 of the municipal corporations act (Deer. Pol. Code, p. 786) vacancies in city offices are filled by the council upon nomination made by the mayor.

The charter of the city of Oakland provides for a police court, to be held by a police judge to be elected by the city, and also provides for the election of two city justices of the peace, but provides that the justices' courts therein provided

for are intended to be the justices' courts provided for by general law, and that there shall be only two justices of the peace in said city. In Ex parte Ah You, 82 Cal. 339, 22 Pac. 929, it was held that the police court provided for by the freeholders' charter of the city of Oakland has no legal existence; and in People v. Toal, 85 Cal. 333, 24 Pac. 603, the same conclusion was reached touching a similar provision in the charter of the city of Los Angeles. In each of these cases there was a dissenting opinion, but they have not been overruled, and are therefore authoritative. It follows, therefore, that the act of March 31, 1891 (Stats. 1891, p. 292), is in force in the city of Oakland. But it does not follow that, because inferior courts in incorporated cities and towns can only be established by the legislature, under section 1 of article 6 of the constitution, and that their jurisdiction, powers, duties, and responsibilities must also be fixed by the legislature under section 13 of the same article, a valid provision for filling vacancies in city offices may not be made in the charter. Such provision in no way trenches upon the constitutional provisions above cited relating to establishing inferior courts and fixing their jurisdiction; nor can it affect the question that city justices are provided for in the general municipal government act and in the Code of Civil Procedure. They are local officers, elected by the electors of the city, with qualifications different from that of township justices, and adapted to the wants of the city and the requirements of its business, with a special jurisdiction added that is purely municipal. If the naming of officers and prescribing their duties by the legislature can make them other than municipal officers, then the mayor and other officers, who are named in the municipal government act, and whose powers and duties are therein prescribed, are not municipal officers. But it is clear that city justices are not township or county officers, and, if so, it is equally clear that the board of supervisors has no authority to fill the vacancy in question. I advise that the judgment appealed from be reversed, with directions to the court below to enter judgment upon the findings in favor of appellant, and that he be restored to his said office.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment appealed from is reversed and the court below is directed to enter judgment upon the findings in favor of appellant and that he be restored to his said office.