[No. 13803. In Bank. — September 15, 1890.]

## J. M. DAVIES, RESPONDENT, *v.* THE CITY OF LOS ANGELES ET AL., APPELLANTS.

CONSTITUTIONAL LAW — SPECIAL MUNICIPAL CHARTERS CONTROLLED BY GENERAL LAWS. — Under section 6 of article 11 of the constitution, all charters framed or adopted under the constitution are subject to and controllable by general laws; and a special charter adopted by a city, under section 8 of article 11, is no exception to this rule, any special provisions of such charter in conflict with general laws passed after its adoption being superseded by such general laws.

ID. — CHARTER OF LOS ANGELES — WIDENING OF STREETS. — The charter of the city of Los Angeles, framed under section 8 of article 11 of the constitution, is subject to general laws; and the statute of 1889, page 70, providing for the opening and widening of streets, is a general law within the meaning of the constitution, and applicable to the city of Los Angeles.

ID. — STATUTORY CONSTRUCTION — GENERAL LAW — SPECIAL INTENT OF LEGISLATURE. — In construing an act of the legislature to determine whether it is a general or special law, the supreme court is governed by the language of the act, and not by any outside showing as to the intent and object of its passage; and a law general in its terms, and which may be applied to all cities, cannot be assailed on the ground that it was in fact passed to affect an improvement in one city only.

ID. — TITLE OF ACT — OBJECT INCLUSIVE OF MEANS — STREET IMPROVEMENTS — ASSESSMENT OF LANDS. — The title of the act of 1889 (Stats. 1889, p. 70), entitled "An act to provide for laying out, opening, extending, widening, straightening, or closing up, in whole or in part, any street, square, lane, alley, court, or place within municipalities, and to condemn and acquire any and all land and property necessary or convenient for that purpose," is sufficient to authorize sections of the act providing for the assessment of other lands to pay for lands condemned pursuant to the act, as a means by which the object of the act, as expressed in its title, is to be accomplished.

ID. — DUE PROCESS OF LAW — NOTICE OF PROCEEDINGS FOR STREET IMPROVEMENTS. — Such act does not provide for taking property without due process of law, by reason of insufficient notice of proceedings under the statute, since it requires that notice must be given of every material step to be taken as against either the owners of land to be taken or of lands to be assessed, and provides for an opportunity to be heard at each step of the proceedings; and the fact that the notice provided for may be given generally by posting, and that no personal notice to each of the parties interested is required, does not render the statute unconstitutional.

ID. — SUFFICIENCY OF NOTICE FOR ASSESSMENT OF LANDS BENEFITED. — The notice required to be given under such act for the assessment of lands benefited, taken in connection with the resolution of intention to which

the notice refers for particulars and which designates the property to be affected, is sufficiently definite to call to the attention of parties interested that the improvement is contemplated; and by a reference to the resolution which becomes, by such reference, a part of the notice, is sufficient to apprise them that their property is included within the district and will be affected by such proceeding.

ID. — CONSTRUCTIVE NOTICE — POWER OF LEGISLATURE. — The legislature has the right to say what notice shall be given in proceedings for the opening and widening of streets, so long as the notice required to be given is reasonable, and the proceeding is not arbitrary, oppressive, or unjust. The notice provided for need not be a personal one, and the service thereof may be constructive.

ID. — ASSESSMENT FOR BENEFITS — CONTINGENCY AS TO COMPLETION OF STREET IMPROVEMENT. — The assessment for benefits that will result to the land assessed under such act is made upon the theory that the work is to be accomplished; and the provisions of the statute authorizing an assessment for benefits and a sale and conveyance on delinquency are not invalidated by the fact that the benefit to result to the property is left in uncertainty, because, under the statute, the work may never be accomplished, and that no benefit could result upon such a contingency.

ID. — AMOUNT OF ASSESSMENT — EXCESSIVE ESTIMATE — REFUNDING EXCESS. — The amount to be assessed under such act depends upon the amount found by the commissioners to be necessary to meet the expenses of the improvement, and not upon the actual expenses as shown by the completion of the work, and, as the act provides for refunding any excess, the fact that it may subsequently appear that they erred in overestimating the amount cannot invalidate the assessment, or otherwise avail the owners of the property assessed, after the report of the commissioners has been made and confirmed by the city council.

ID. — VALUATION OF LANDS TAKEN — VOLUNTARY CONVEYANCE — CONDEMNATION PROCEEDINGS — PARTY ASSESSED FOR BENEFITS CANNOT OBJECT. — The provisions in such act for the assessment by commissioners of the value of the property taken, and for a voluntary conveyance of the land taken at such valuation, if the amount thus fixed is satisfactory to the owner, and if not, for condemnation of the property as in other cases, cannot affect the validity of the statute, nor the liability of the owner of property benefited to pay the assessment made against him; nor can such owner raise any questions upon the subject of the condemnation of the lands taken, affecting only the rights of the city and the party whose property is sought to be taken.

ID. — DELEGATION OF MUNICIPAL FUNCTIONS TO SPECIAL COMMISSION — POWERS OF COMMISSIONERS TO OPEN STREETS — APPROVAL OF CITY COUNCIL. — Such act is not in violation of section 13 of article 11 of the constitution on the ground that it delegates to a special commission the power to perform municipal functions, as the commissioners are simply made the agents of the municipalities to assist them in opening the streets, and act under their direction, and their acts are not binding or effective until the same are approved and confirmed by the city council.

INVALID ASSESSMENT FOR STREET IMPROVEMENT — FAILURE TO ASSESS WHOLE PROPERTY BENEFITED — INJUNCTION — PLEADING — DEMURRER. — In an action to declare void an assessment under such act, made against the property of the plaintiff for the payment of the expenses of opening and widening a street, and to enjoin the enforcement thereof, an allegation in the complaint that the property within the assessment district was not all assessed renders the complaint sufficient, and a demurrer thereto is properly overruled.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*C. McFarland, Wells, Guthrie & Lee, Horace G. Platt, amicus curiæ,* and *Pierson & Mitchell, amici curiæ,* for Appellant.

*John Haynes, Cameron H. King, amicus curiæ,* and *Henry E. Highton, amicus curiæ,* for Respondent.

WORKS, J. — This is an action by the respondent against the city of Los Angeles and W. E. Morford, street superintendent of said city, to declare void an assessment made against the respondent's property for the payment of the expenses of opening and widening a certain street in said city, and to enjoin the enforcement thereof. There was a demurrer to the complaint, which was overruled, and, the defendants standing on their demurrer and refusing to answer, judgment was rendered accordingly, and the defendants appeal. The proceedings complained of were had under and in conformity to the act of the legislature of 1889, providing for the opening and widening of streets. (Stats. 1889, p. 70.) It is not only contended that the statute referred to was not fully complied with, but the statute itself is attacked on the ground that it is unconstitutional; and it is further claimed that, as the special charter of Los Angeles contains ample provisions for the opening and widening of streets, the statute is not applicable to that city. The

latter of these propositions is mostly relied upon, apparently, by counsel for the respondent, as it is much more fully and elaborately argued than other questions presented in his brief. But the point is made that the statute is unconstitutional on several grounds, and these points are supported by the attorneys, who are interested in other cases involving the same questions, and who have for that reason been allowed to file briefs.

As the question whether the statute in question or the special charter of Los Angeles shall prevail is presented by counsel for respondent alone, it will be first considered. The learned counsel has presented his views in support of the charter as the prevailing and only law in force in the city with great clearness and ability, but his whole argument is, in our opinion, in the face of direct constitutional provisions and a number of decisions of this court. His contention is, that the charter of the city contains provisions covering the entire subject embraced in the act referred to; that the provisions of the two are wholly inconsistent and irreconcilable, and cannot stand together; that a charter prepared and approved as this was, under the provisions of the constitution, cannot be altered, amended, annulled, repealed, or superseded by any act of the legislature, general or special; and that, therefore, proceedings of this kind cannot be taken under the statute, but must be had under the charter.

Section 8, article 11, of the constitution as amended, provides: "A city, or consolidated city and county, containing a population of, etc., may frame a charter for its own government, consistent with and subject to the laws of this state, by causing a board of fifteen freeholders, who shall have been, for at least five years, qualified electors thereof, to be elected by the qualified voters of such city, or city and county, at any general or special election, whose duty it shall be, within one hundred days after such election, to prepare and propose a charter for

such city, or city and county. . . . . And if a majority of such qualified electors voting thereat shall ratify the same, it shall thereafter be submitted to the legislature for its approval or rejection as a whole, without power of alteration or amendment; and if approved by a majority vote of the members elected to each house, it shall become the charter of such city, or, if such city be consolidated with the county, then of such city and county, and shall become the organic law thereof, and supersede any existing charter or amendment thereof, and all special laws inconsistent with such charter. . . . . All courts shall take judicial notice thereof. The charter so ratified may be amended, at intervals of not less than two years, by proposals therefor, submitted by the legislative authority of the city, or city and county, to the qualified voters thereof, at a general or special election held at least sixty days after the publication of such proposals, and ratified by at least three fifths of the electors voting thereat, and approved by the legislature, as herein provided for the approval of the charter." This section provides, in terms, that a charter framed under it shall be "consistent with and subject to the laws of this state."

And section 6, article 11, further provides that "all charters framed or adopted by authority of this constitution shall be subject to and controlled by general laws." The language of this latter section is plain and unambiguous, and cannot be explained away by any reasoning, however ingenious. It makes all charters framed or adopted under the constitution subject to and controllable by general laws. (*Thomason* v. *Ashworth,* 73 Cal. 73; *People* v. *Henshaw,* 76 Cal. 436; *Ex parte Ah You,* 82 Cal. 339. See also *Brooks* v. *Fischer,* 79 Cal. 173.)

The question before us was carefully and thoroughly considered in the cases cited, and it is conclusively shown that a charter like the one under which the city

of Los Angeles exists is subject to general laws, and that a statute like the one now attacked is a general law within the meaning of the constitution. It is useless to discuss the propriety of allowing the legislature to interfere by general laws with the local affairs of a city. The constitution so provides, in plain terms, and, so far as the courts of the state are concerned, this must settle the controversy. If the power given the legislature to enact laws of this kind is an evil affecting the rights of the city governments, the remedy is by amendment of the constitution. The courts cannot override a plain constitutional provision, however objectionable it may seem to parties interested. The only question about which there could be any reasonable doubt is, whether the statute under consideration is a general law or not, and that question has been firmly settled by several well-considered cases, above cited, and should be equally beyond controversy in the courts of this state.

It is contended that although the statute is general in its terms, and made applicable to all cities, it was, in fact, passed for the purpose of affecting the improvement of a certain street in the city of San Francisco; but we must be governed by the language of the act, and not by any outside showing as to the intent and object of its passage. Counsel concedes that the decided cases give a "construction to these provisions wholly inconsistent with that for which he contends," but attempts to show that the precise question involved here has not before been presented in such form as to make a decision of it necessary. Perhaps the precise question now before us has not been presented in the same form that it is now presented, but the precise principle here involved has been presented, and decided adversely to his contention, which is the same thing in effect.

It is urged upon us that the statute is unconstitutional so far as it gives authority to assess the property of persons within the assessment district, because the subject

of such assessment is not included in the title of the act. The title of the act is as follows: " An act to provide for laying out, opening, extending, widening, straightening, or closing up, in whole or in part, any street, square, lane, alley, court, or place within municipalities, and to condemn and acquire any and all land and property necessary or convenient for that purpose." We think this point is not well taken. The subject of the act, and the only one, is the laying out, opening, extending, widening, straightening, or closing up streets, squares, lanes, alleys, and courts, or places, and all of the provisions of the act relating to the condemnation of lands, and assessments of other lands to pay therefor, are the means by which this one object of the statute is to be accomplished. Therefore the title of the act, instead of containing less than is necessary, contains more than the constitution requires. (*De Witt* v. *San Francisco*, 2 Cal. 289, 299; *People* v. *Briggs*, 50 N. Y. 553, 563; *Brewster* v. *City of Syracuse*, 19 N. Y. 116.)

It is further contended that the statute is unconstitutional because it provides for. taking property without due process of law, because the notice provided for may be given generally by posting, and no personal notice to each of the parties interested is required or authorized. Section 2 of the act provides that before ordering the work to be done. the city council shall pass a resolution declaring its intention to do so, describing the work of improvement, and the land deemed necessary to be taken therefor, and specifying the exterior boundaries of the district of lands to be affected or benefited by said work or improvement, and to be assessed to pay the damages, costs, and expenses thereof. Section 3 provides for notice of the passage of such resolution as follows: " The street superintendent shall then cause to be conspicuously posted along the line of said contemplated work or improvement, at not more than three hundred feet in distance apart, but not less than three in all, notices of

the passage of said resolution. Said notice shall be headed, 'Notice of Public Work,' in letters not less than one inch in length, shall be in legible characters, state the fact of passage of the resolution, its date, and briefly the work or improvement proposed, and refer to the resolution for further particulars. He shall also cause a notice, similar in substance, to be published for a period of ten days in one or more daily newspapers published and circulated in said city, and designated by said city council; or if there is no daily newspaper so published and circulated in said city, then by four successive insertions in a weekly or semi-weekly newspaper so published, circulated, and designated." Sections 4 and 5 provide when and how the owners of either the property to be taken or that to be assessed may appear and object to the improvement, and for a hearing of such objections by the city council. Following sections provide for the appointment of commissioners to determine the value of the land to be taken, the amount of expenses, and that such commissioners shall determine the value of the land taken, fix the amount of expenses, assess the benefits to the several tracts of land within the district, and that they report their proceedings to the city council. Section 13 provides for notice of the action of the commissioners as follows: " Said report and plat shall be filed in the clerk's office of the city council, and thereupon the clerk of said city council shall give notice of such filing by publication for at least ten days in one or more daily newspapers published and circulated in said city; or if there be no daily paper, by three successive insertions in a weekly or semi-weekly newspaper so published or circulated. Said notice shall also require all persons interested to show cause, if any, why such report should not be confirmed, before the city council, on or before the day fixed by the clerk thereof, and stated in said notice, which day shall not be less than thirty days from the first publication thereof."

Section 14 provides for objections to be made by parties interested, for a hearing of such objections, and a decision by the city council. The report of the commissioners, as confirmed or corrected, is required by section 15 to be certified to the street superintendent by the clerk, and by section 16 notice by the street superintendent is required as follows : " The superintendent of streets shall thereupon give notice by publication for ten days in one or more daily newspapers published and circulated in such city, or city and county, or by two successive insertions in a weekly or semi-weekly newspaper so published and circulated, that he has received said assessment roll, and that all sums levied and assessed in said assessment roll are due and payable immediately, and that the payment of said sums is to be made to him within thirty days from the date of the first publication of said notice. Said notice shall also contain a statement that all assessments, not paid before the expiration of said thirty days, will be declared to be delinquent, and that thereafter the sum of five per cent upon the amount of each delinquent assessment, together with the cost of advertising each delinquent assessment, will be added thereto."

The same section provides for the sale of the lands assessed if the assessments are not paid. It is further provided, by section 18, that in case any owner of land neglects or refuses to accept the amount allowed him as damages, or objects to the report as to the necessity of taking his land, proceedings may be taken to condemn the same under the law of eminent domain. Thus it will be seen that notice of every material step to be taken as against either the owners of land to be taken or of lands to be assessed is required to be given, and an opportunity to be heard at each step of the proceedings is provided for. Therefore, if constructive service is sufficient in this class of cases, the objection made to the statute on this ground is without foundation. (*Spencer*

v. *Merchant,* 125 U. S. 345.) It must be borne in mind that two proceedings are contemplated and provided for in the act, one against the property to be condemned for the use of the street, the other to assess other property benefited by the improvement. This action is not by the owner whose land has been condemned. If the notice provided for as against him or his property is not sufficient, it cannot avail the respondent in this case, because a perfect means of condemning property is provided for, as we have seen, by section 18, and this 'object may be accomplished, and the statute be valid, conceding that the notice provided for as against the owner whose land is to be taken is insufficient. So the question is reduced to this: Is notice by posting and publication sufficient as against the land to be assessed? or must personal notice be given? As to this question, it seems to us there is no room for controversy. The legislature has the undoubted right to say what notice shall be given in this class of cases, so long as the notice required to be given is reasonable, and the proceeding is not arbitrary, oppressive, or unjust, and the notice provided for need not be a personal one. (*Lent* v. *Tillson,* 72 Cal. 404, 413; *Scott* v. *City of Toledo,* 36 Fed. Rep. 385, 396.)

The notice provided in this case is sufficiently definite. The property to be affected must be designated in the resolution of intention, and the notice must refer to this resolution for particulars. This being so, the notice is sufficient to call to the attention of parties interested that the improvement is contemplated, and by a reference to the resolution which becomes, by reference to it, a part of the notice, it is sufficient to apprise them that their property is included within the district, and will be affected by such proceeding. In this the notice differs materially from the one condemned in *Boorman* v. *Santa Barbara,* 65 Cal. 313.

The next point urged against the statute is, that it " authorizes an assessment for benefits and a sale and

conveyance on delinquency, while the improvement supposed to confer the benefits is hypothetical, and may be incapable of materialization." In support of this objection to the law, it is contended that the benefits that will result to the land assessed must be rendered certain before the lien is imposed, and that the statute does not require this to be done. But although counsel attempt so show that the benefits to result need not be made certain, under the statute, they fail to convince us that there is or may be any greater uncertainty under this statute than any other which leaves the amount of benefits likely to result to property from a proposed improvement, to the mere judgment of parties upon which the duty of making the assessment devolves. In this connection it is contended that the benefit to result to property affected is left in uncertainty, because, under the statute, the work may never be accomplished. But the assessment of benefits is made upon the theory that the work is to be accomplished, and if it is not, it is quite certain that no benefit could result. Such a contingency could hardly invalidate the statute.

Again, it is claimed that the " provisions of the act admit of an assessment for benefits largely in excess of the amount needed." We are not convinced of the truth of this contention. But if, as is contended might be the case, the expenses should prove to be less than has been estimated by the commissioners in any given case, and the assessments are therefore too high, the act provides for refunding the excess. To hold that the assessment would be invalid, and the statute authorizing it void, because the expenses incurred and the amount assessed did not, or might not, correspond exactly, would defeat every law of this kind. The amount to be assessed depends upon the amount found by the commissioners to be necessary to meet the expenses of the improvement, and not upon the actual expenses as shown by the completion of the work. The fact that it may subsequently

appear that they erred in estimating the amount cannot invalidate the assessment, or otherwise avail the owners of the property assessed, after the report of the commissioners has been made and confirmed by the city council.

Again, it is contended that so much of the statute as provides for the assessment of the value of the property taken is invalid for various reasons. For the purposes of this case this point may be conceded. The statute itself recognizes the fact that by such a proceeding the property owner cannot be compelled to part with his property. It is only a means by which the value of the property may be ascertained, and, if the amount thus fixed is satisfactory to the owner, and he voluntarily conveys to the city for that sum, the object sought is accomplished without the expense of condemnation proceedings. It is simply a means provided of agreeing to a conveyance of the property for the purposes of a street, the commissioners acting as the agents of the city. If the owner voluntarily conveys the property, the title thus obtained is as good as one procured by a condemnation proceeding, and the expense of such proceeding is avoided. Of this the owner of property assessed can have no reason to complain. But if the owner is not satisfied, and refuses to make the conveyance, then it is provided that the property may be condemned as in other cases. We are unable to see how these provisions can affect the validity of the statute, or the liability of the respondent to pay the assessment made against him. So it is claimed that the provision in the statute, that the city may enter upon the land and proceed with the work before the damages are paid, is contrary to section 14 of article 1 of the constitution. But this does not concern the party whose property has been assessed. It is a question affecting the rights of the city and the party whose property is sought to be taken.

Finally, it is contended that the statute is in violation of section 13 of article 11 of the constitution of this

state, because it delegates to a special commission. the power to perform municipal functions. But conceding, without deciding, that the opening or widening of public highways within a city are municipal functions, it does not appear that any such functions were delegated to this commission. · The commissioners are simply made the agents of the municipalities to assist them in opening streets. They act under the direction of the city authorities, and their acts are not binding or effective until the same are approved and confirmed by the city council. Therefore, the act done is the act of the city, at last, and not of the commissioners. The case of *Mellon* v. *Pittsburgh*, 31 Leg. Int. 212, is not in point. The provision of the Pennsylvania statute, held in that case to be invalid, delegated to the commission named therein independent powers. They were not subject to the control of the municipal authorities in the performance of their duties, and it was upon this ground that the act conferring such powers upon them was held to be in violation of a section of the constitution of that state similar to if not identical with ours.

But the complaint contains an allegation that the property within the assessment district was not all assessed. This allegation rendered the complaint sufficient. (*People* v. *Lynch*, 51 Cal. 20; 21 Am. Rep. 677; *Moulton* v. *Parks*, 64 Cal. 181; *Dyer* v. *Harrison*, 63 Cal. 447; *Diggins* v. *Brown*, 76 Cal. 318.)

Numerous briefs have been presented in this case; some by attorneys not of counsel in the case. They have shown great ability, industry, and ingenuity in the attempt to break down this statute. We have given all of these briefs our careful attention, realizing the importance of the questions presented, and have endeavored to notice and pass upon every point made. After this thorough presentation and examination of the case, we are constrained to hold that the statute under consideration is valid, and that it is in force within the limits

of the city of Los Angeles. But the allegation in the complaint that the property was not all assessed rendered it sufficient, and the demurrer should have been overruled.

Judgment affirmed.

THORNTON, J., McFARLAND, J., and PATERSON, J., concurred.

Fox, J., concurring.— I concur in the judgment, but do not concur in what is said in support of the proposition that the act of 1889 is in force in the city of Los Angeles. Of the written laws of this state there are four classes, each established in a different mode, and by a different body or branch of the government, and each equally binding upon the courts within its appropriate sphere.

1. The first of these is the constitution. This is established by the people of the whole state, acting in their collective capacity, and as to all other state laws is the supreme law of the land. The mode of establishing all other written laws of the state, or of any part of the state, is that, and that only, which is prescribed or permitted by this supreme law so established by the people. This law, in its operation upon the people as individuals, and upon every department of the government which is established by it, is made by its own terms mandatory and prohibitory, except when otherwise within it expressed. (Const., art. 1, sec. 22.)

2. The general statute laws of the state. By the constitution it is ordained that these must be established by the legislative department of the state government. The mode and manner of their passage is prescribed in sections 15 and 16, article 4. It must be by bill, and requires the concurrent action not only of the two houses of the legislature, but of the governor; or if he refuses to concur, then a consideration of his reasons and reaction thereon by both houses, and the concurrence of two

thirds of all the members elected to each house. Thus acting, the legislative department may establish necessary and appropriate laws upon all subjects, and for all purposes not in conflict with or prohibited by the constitution, and must establish laws upon certain subjects and for certain purposes named in the constitution. The term "general laws," as used in all constitutions or statutes, has both a general or common, and a technical or restricted, meaning. In which sense it is used depends in each particular instance upon the context and the general scope of the instrument, or of that part of the instrument in which it is found. In one of these senses, that is held to be a general law which applies to and operates upon all of a given class of places or persons; in the other, that is a general law only which applies to and operates upon all persons and in all places alike.

3. Municipal charters, framed and adopted by the people resident within the municipality affected, acting directly, and in the manner prescribed in section 8, article 11, of the constitution. Such charters may be said to be general laws in that they apply to and operate upon all people within the territorial limits of the municipality alike; but they are special and local in that they have no force or effect outside of such territorial limits. Their establishment by the legislative department of the state government is expressly prohibited by the constitution. (Art. 11, sec. 6.) For the establishment of these laws the constitution takes from the legislature and delegates to the people of the municipalities respectively, when they shall see fit to exercise it, the power to frame and adopt the law, and in that way to establish a special and local law such as the legislature is forbidden to establish; the general law-making department of the state government having no power in the premises as such, but the members of the two houses of the legislature being required to express their assent

to or approval of the instrument as a whole, without alteration or amendment, before it becomes an established law. When so established and approved it is valid law, a part of the written law of the state, — as much so, and as binding upon the courts, as any act of the legislature; but, unlike an act of the legislative department of the state government, that department has no power ever to alter or amend it. Alterations or amendments of it, like alterations or amendments of the constitution, can only be made by the people by whom the original was adopted. So far as it is not in conflict with the constitution or the general laws of the state,— and by that I mean laws which operate upon all persons and in all places alike, — it is beyond the reach of the legislature, and "supersedes any existing charter and all amendments thereof, and all special laws inconsistent with such charter." (Art. 11, sec. 8.) In my judgment, the word "special," as there used, includes all laws which are not general in the broadest sense; that is, all laws which do not operate upon all persons and in all places in the state alike.

4. The remaining class of written laws consists of municipal ordinances established by the legislative departments of the respective municipalities, and in the manner prescribed by their respective charters, or by the general law in cases where municipalities are acting under general law.

In dissenting from the opinion of my associates in this case, I concede that the several cases cited by Mr. Justice Works, heretofore decided by this court, contain expressions which in form justify the conclusion reached in his opinion; but this is the first time in which a case has come before the court directly involving a conflict on matters purely local and municipal between the provisions of a special charter framed and adopted by the people, as authorized by the constitution, and the provisions of an act of the legislature which is a "general

law" only in the narrow and restricted sense of being a law which on its face applies to all municipal corporations. Being so, it furnishes the first and only opportunity which we have had of taking a broad and comprehensive view of the provisions of the constitution affecting municipal corporations. There can be no doubt that the court has always been correct in its expressions indicating that municipal corporations acting as such under the general municipal incorporation law must be governed by and conform to general laws of this class, which on their face affected and were framed to apply to all municipalities; for that is not only in conformity with the express provisions of the constitution, but also with the general interpretation of statutes. One act of the legislature will always repeal another and earlier which is in direct conflict with it on the same subject, unless expressly provided otherwise. But under the constitution, an act of the legislature will not repeal, and cannot repeal by implication or in express terms, the provisions of a special charter like that of Los Angeles, and other municipalities having charters framed and adopted by the people, and approved by the members of the two houses, unless it is done by force of some express provision of the constitution itself. I do not accede to the proposition that the court has been heretofore correct in holding that municipalities, acting under special charters granted by the legislature, before the adoption of the present constitution, and at a time when municipalities could only be established in that way, were governed by and their charters must yield to the provisions of laws which are general only in the sense that they apply to municipalities generally, and not elsewhere; but the court has so often so held, in considering statutes like the one sustained in this case by the leading opinion, that if this were the case of such a corporation, I might hesitate about expressing my dissent at any length, at this late day, to a decision which only re-

affirmed opinions expressed by the first justices elected under the present constitution. But this is not such a case. As before said, the question now comes up for the first time, for the interpretation of what may be called a "constitution charter," and if the court cannot correct what I conceive to be the errors of the past, it can, and I think it ought, at least to refuse to perpetuate those errors as against these new charters which are expressly authorized and protected by the constitution. What I conceive to be the error of the past, and the error now proposed, grows out of what, in my judgment, is a misinterpretation of the term "general laws," as found at the close of section 6 of article 11 of the constitution. The closing words of that section are: "Cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

It is said that the common law of England is made up of "general customs" and "particular customs," the former being those customs which prevail throughout the realm, and the latter those which prevail in particular places. It would have been better for us, and we should have fallen into less of error, if we had retained those descriptive words of the early law-writers in the same sense in which they used them, and said of our own statute laws, they consist of, — 1. General laws, which are such as prevail throughout the state, and operate upon all persons and in all places alike; 2. Particular laws, which are such as apply to a particular class or particular classes of persons, or in particular places, but not to all persons and in all places; 3. Special laws, which are such as are passed for the accomplishment of some special purpose, or for the benefit of some particular person, — of these perhaps relief bills are the most common example; 4. Local laws, which are such as apply in some particular place only. With such a classification as this, we should never have fallen into such confusion

as now prevails as to the meaning of the term " general laws," and the court would from the beginning have interpreted that term as used at the close of section 6, as above quoted, as I believe it ought now to be interpreted. If we give to this term, as is given to it in the opinion of Mr. Justice Works, and in the cases which he cites, an interpretation which includes anything less than the entire state, and all persons and all places in it, we make section 8 of the same article of the constitution a farce and a snare.   Under such an interpretation, it is worse than folly for the people of a municipality to avail themselves of the express permission of the constitution, and frame and adopt for themselves a municipal charter which the constitution forbids the legislature to alter or amend; for if this interpretation is to prevail, the legislature may do indirectly what it is expressly forbidden to do directly.   To so hold is to impute to the framers of the constitution an absence of intelligence, or a degree of duplicity, which I cannot conceive to be possible. On the other hand, to construe the term " general laws," as used in this place and in this connection, as meaning only those laws which apply throughout the state, governing all persons and all places in the state, makes the constitution in this regard one harmonious whole, and secures to the people one of the very objects had in view in calling the convention which framed the constitution, — the right of local self-government as to matters purely local and municipal, a right which is utterly defeated by the prevailing construction.

The same rule should be applied in construing the words quoted by Mr. Justice Works from section 8, to the effect that these charters must be " consistent with and subject to the laws of this state."   Of course that refers to general laws, since the legislature is forbidden to pass special or local laws for the government of municipalities, and since by the same section of the constitution these charters, which are both special and local,

supersede "all special laws in conflict therewith." When the constitution says in section 8 that the charter framed and adopted in accordance with the provisions of that section must be " consistent with and subject to the laws of this state," it means the same laws as those meant in section 6, where it says that they "shall be subject to and controlled by general laws." In *Thomason* v. *Ashworth*, 73 Cal. 73, and *People* v. *Henshaw*, 76 Cal. 436, the charters under consideration were special charters, passed by the legislature, and subject to alteration and amendment, under the constitution under which they were passed, at the will and pleasure of the legislature. Even if it be true that since the adoption of the present constitution such charters are to be controlled by general laws of the restricted character which apply only to particular places, — namely, to municipalities, and not to the state at large, — laws such as I have herein suggested should be designated as " particular laws," and not as " general laws," it does not follow that section 8 of article 11 of the constitution should be destroyed and rendered worse than nugatory, by holding that charters established under its provisions should also be subject to that limited kind of general laws. *Ex parte Ah You*, 82 Cal. 339, is not in conflict with these views, for there the court was acting, not upon the provisions of the charter generally, but upon the single provision of such a charter establishing a police court. That provision may be void, and the balance of the charter be valid. If void, as in the more recent case of *People* v. *Toal*, 85 Cal. 333, I felt compelled to concede it to be, it was not so because of conflict with a law of the class here under consideration, but because of conflict with the constitution itself, the language of the constitution being that such courts must be established, not " by law," but " by the legislature." Another clause of the constitution provides that such courts shall have such jurisdiction as is conferred upon them " by law."

Under the constitution, therefore, the court must be established by the legislature, but, being so established, I have no doubt jurisdiction might be conferred upon it by one of these charters, in cases arising under the charter, or under municipal ordinances passed in pursuance thereof. *Brooks* v. *Fischer*, 79 Cal. 173, was, it is true, a case in which the same charter here under consideration was involved. But there the question was as to the validity of the charter as a whole, the real question being as to whether it had been properly approved by the legislature. It was suggested that even if properly approved it was still invalid, because some of its provisions were in conflict with the provisions of some of this class of miscalled general laws. It was correctly held that a conflict of some particular provision of a charter with such a law would not vitiate the whole charter, and in discussing that question, it was merely assumed that the ruling in the former cases might apply to these charters, but without deciding that they would do so.

Entertaining these views, I am clearly of the opinion that the act of 1889, under which the proceedings complained of in this case were had, does not apply to municipalities acting under charters framed, adopted, and established as provided in section 8, article 11, of the constitution, and is not in force within the limits of the city of Los Angeles.

BEATTY, C. J., concurring. — I concur in the judgment, and in the main in the opinion of Justice Fox. For the reasons set forth in the dissenting opinions of Justice McKinstry in *Thomason* v. *Ashworth*, 73 Cal. 73, and in *People* v. *Henshaw*, 76 Cal. 453, I think those cases, and the case of *Ex parte Ah You*, 82 Cal. 339, were erroneously decided, and that the provisions of the charter of Los Angeles with respect to the opening and widening of streets apply in that city, to the exclusion of the statute of 1889. I think, moreover, that the statute

is unconstitutional on two grounds: 1. It does not, when tested by the liberal doctrine of *Lent* v. *Tillson,* 72 Cal. 404, provide for any proper notice to owners of property affected; and 2. It permits assessments upon the property supposed to be benefited in excess of the benefits.