[S. F. No. 5776. Department Two.—December 26, 1912.]

## WEST BERKELEY LAND COMPANY (a Corporation), et al., Appellants, v. CITY OF BERKELEY (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATION—OPENING STREET OVER TIDE LANDS.—A municipality has power, under the provisions of the Street Opening Act of 1889 (Stats. 1889, p. 70), to open or extend its streets over tide lands.

ID.—MEANING OF WORD "LAND."—The words "land" and "lands" as used in that act, are used in the technical sense meaning "territory," and not in their popular sense as meaning the exposed surface of the earth as distinguished from ground which is alternately covered and uncovered by the tides.

ID.—POSTING NOTICES OVER TIDE LANDS—NOTICES ATTACHED TO FLOATS. It is a sufficient posting of notices of the passage of the resolution of intention to open a street across tide lands, to attach the same to floats anchored at proper intervals along the line of the proposed work, so constructed that the notices appeared two and a half or three feet above the surface of the water, and in the absence of a contrary showing, it must be presumed that such notices remained in place during the period contemplated by the statute.

ID.—SUFFICIENCY OF NOTICE TO PERSONS NOT OWNERS OF TIDE LANDS.— Even if such a posting were insufficient as against the owners of the tide lands sought to be condemned, other persons, who were merely landowners within the assessment district affected, could not complain of the insufficiency.

ID.—DESCRIPTION OF EXTERIOR BOUNDARIES OF ASSESSMENT DISTRICT— REFERENCE TO UNOPENED STREET—DEDICATION AND ACCEPTANCE BY MUNICIPALITY.—In describing in the resolution of intention the exterior boundaries of the district to be assessed for such work, it is a sufficient compliance with the requirements of section 2 of that

act, to identify a portion of such boundaries by reference to a certain unopened street, the dedication of which, as the same was delineated upon a particular map on file, had been previously accepted by the municipality, prior to any manifestation by the owner of an intention to revoke the dedication, and before any rights of third persons had intervened.

ID.—DESIGNATION OF TERMINUS OF STREET—LOCATION OF BOUNDARY OF TIDE LAND—REFERENCE TO MAP IN ANOTHER COUNTY.—A resolution of intention which declares the purpose to open and extend a street "westerly to the westerly boundary line of state tide lands," within the municipality, is not rendered insufficient merely because, for the purpose of exactly locating such boundary, reference must be had to an official map the custody of which was intrusted to an official who was not located in the county in which the municipality was situated.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

McKee & Tasheira, and R. M. F. Soto, for Appellants.

Redmond C. Staats, James M. Koford, F. D. Stringham, and George L. Hughes, for Respondents.

MELVIN, J.—Plaintiffs sued to recover from the city of Berkeley money paid under protest to prevent the sale of certain lands by the superintendent of streets of that city because of delinquency in paying assessments upon said properties levied in the proceedings for the opening and extension of Snyder Avenue under the provisions of the Street Opening Act of 1889. (Stats. 1889, p. 70.) From a judgment in favor of defendants this appeal is taken.

Appellants question the authority of the municipality to open or extend its streets over tide lands. By the first section of the Street Opening Act of 1889 the city council of any municipality is granted power "to condemn and acquire any and all land and property necessary or convenient for that purpose." Appellants quote a number of sections of that statute in an effort to show that the words "land" and "lands" are employed in the act in their ordinary and popular meaning rather than in a technical sense. They assert that "lands" in the ordinary acceptation of the term is a

word applicable to the exposed surface of the earth and not to ground which is alternately covered and uncovered by the flow and ebb of the tide. They say that the constitution and codes of California make a distinction between public lands in the ordinary sense and tide lands (citing Const., art. XVII, sec. 3; art. XV, sec. 3; Pol. Code, secs. 3395 et seq.; Pol. Code, sec. 3443a), but they have evidently lost sight of the fact that the differences in treatment by the law-making power of tide lands and other public lands is due partly, at least, to the different sources of the state's original title, the lands above the shore having been acquired by direct grant from the general government, and the tide lands by reason of the state's sovereignty. (*People* v. *Morrill*, 26 Cal. 352.) Very early in the history of California this court recognized and declared the right of the state to surrender into the jurisdiction and control of a city and to sell into private ownership not only tide lands but those perpetually submerged. (*Eldridge* v. *Cowell*, 4 Cal. 87.) Jurisdiction over lands of this kind logically involves such incidental authority as the city may exercise in the condemnation of rights of way, the construction of streets and the like. In *City of Oakland* v. *Oakland Water Front Co.*, 118 Cal. 185, [50 Pac. 286], the chief justice, delivering the opinion of this court, said: "It is true that the private ownership of the shore may prevent access to the navigable waters of the bay, but so does the private ownership of the upland prevent access to the shore and to the navigable waters in the same sense and to the same extent. This, however, is a minor and temporary inconvenience for which our laws and the laws of all civilized states provide an ample remedy. By the exercise of the right of eminent domain all necessary means of access from the uplands to the waterfront may be condemned for the public use, at a cost not in excess of the reasonable value of the land taken or subjected to the servitude." The right of a city to reserve portions of the lands lying below tide water within its limits for street purposes was fully recognized in *Shirley* v. *City of Benicia*, 118 Cal. 346, [50 Pac. 404]. Both before and after the passage of the act under which the opening and extension of Snyder Avenue was conducted, there were adjudications of a municipal corporation's power to extend streets across tide lands into deep water within the limits of such city. The legisla-

ture has left the act in practically its original form, and we must conclude, in view of both prior and subsequent judicial decisions, that the words "land" and "lands" in that statute were used in the technical sense meaning "territory" and not with the definition for which appellants contend. By the very first section of the act the city council is given "full power to order the opening, extending . . . or closing up . . . of any street . . . within the bounds of such city, and to condemn and acquire any and all land and property necessary or convenient for that purpose." It would be difficult to find general language more completely inclusive of municipal territory both wet and dry, both exposed and submerged. There can be no rational doubt of the city's power to extend the street in question over tide lands.

Appellants condemn the method adopted by the street superintendent in posting notices of the passage of the resolution of intention in the matter of opening Snyder Avenue. According to the evidence these notices seem to have been in due form and to have been printed in letters of requisite size. Guided by a surveyor on shore the superintendent of streets went out in a boat at high tide and anchored notices attached to floats at proper intervals along the line of the proposed work over the tide lands. The floats were so constructed that the notices appeared two and a half or three feet above the surface of the water. This method of posting is the only part of the service of notice of which appellants complain. There is no contention that notice was not sufficiently given by publication in a newspaper and by posting along that part of the proposed street which was above the line of high tide; but appellants assert that no reasonable notice may be given by the anchoring of floats supporting small placards at intervals of three hundred feet far out in the bay. Even if the notice given were not sufficient as against the owners of the tide lands (and we think it was ample), nevertheless these appellants could not reasonably complain because they were not owners of property to be condemned, but were residents within the assessment district affected. (*Davies* v. *City of Los Angeles*, 86 Cal. 46, [24 Pac. 771].) The sort of constructive notice authorized by the act here considered has been so long approved that there is now no doubt of its sufficiency where the requirements of the statute have been followed. (*Davies*

v. *City of Los Angeles,* 86 Cal. 46, [24 Pac. 771].) The constitutionality of the statute has been upheld frequently, notably in the case of *Clute* v. *Turner,* 157 Cal. 74, [106 Pac. 240]. There is no force in the suggestion of appellants that from the material upon which the notices were printed, the manner of their attachment to the tide lands and the character of those lands, it must be presumed that the placards did not remain posted during the period contemplated by the statute. The presumption is just the opposite. Due performance of duty by an officer of the law is presumed and the burden of proof is upon the person asserting official default. (*County of Los Angeles* v. *Lankershim,* 100 Cal. 532, [35 Pac. 153, 556].) When, as in this case, an affidavit is made that notices have been posted as required by law, the presumption arises that they remained in place during the statutory period. (*Estate of Sbarboro,* 70 Cal. 149, [11 Pac. 563]; *Crew* v. *Pratt,* 119 Cal. 153, [51 Pac. 38].)

The next assignment of error made by appellants relates to the exterior boundaries of the district to be assessed for the work here considered. The appellants say that these boundaries are not so specified that they can be ascertained, and our attention is called particularly to that part of the description depending upon the location of the southerly line of Stuart Street. It appears from the evidence that Stuart Street had no existence as an open street upon the ground prior to the initiation of the proceedings to extend Snyder Avenue. On August 7, 1888, Mrs. Mary D. Mathews caused the filing of a map of "Mathews Tract, Berkeley, Oakland Township," upon which was delineated certain streets, one of them designated as "Moss Street." On June 27, 1892, the town of Berkeley accepted this dedication, and on October 16, 1893, the name of Moss Street was changed by ordinance to "Stuart Street." Between the time of the filing of the map and the acceptance of the proposed dedication by the city the land was inclosed by a fence. No property was sold in accordance with the map and the land was farmed until the death of Mrs. Mathews in 1900. After that it was not cultivated and the fence was removed. On July 11, 1892, after the formal acceptance by the town of Berkeley of the dedication of the streets shown on the map of the Mathews Tract, Mary D. Mathews filed a declaration of revocation by which

she sought to annul her map of 1888. In this document she declared among other things that "said map was filed merely for the purpose of convenience and for no other or further purpose and not for the purpose of dedicating or offer to dedicate any street delineated thereupon." The only question for us to determine is whether the reference to Stuart Street in describing the exterior boundaries of the assessment district was a sufficient compliance with section 2 of the act of 1889. That section prescribes a description in the resolution of intention "specifying the exterior boundaries of the district of lands to be affected," etc. The act does not indicate the sort of monuments or measurements to be used in the description, nor that streets, whether formally dedicated or not, should be mentioned therein; but assuming the formal dedication and acceptance of a street to be necessary in order that its lines should officially form any part of the exterior boundaries of the district, we are of the opinion that the resolution of intention in this case was sufficient. Between the date of the filing of the map and that of the acceptance of the streets by the city, nothing was done by Mrs. Mathews to indicate a change in her declared intention to devote certain platted spaces to the use of the public as streets, nor does it appear that the intervening rights of third persons are involved. The matter is therefore covered by principles announced in *City of Los Angeles* v. *McCollum,* 156 Cal. 149, [23 L. R. A. (N. S.) 378, 103 Pac. 914].

Appellants attack that part of the resolution of intention which declared the purpose to open and extend Snyder Avenue "westerly to the westerly boundary line of state tide lands," on the ground that the owner is entitled to know from an inspection of the resolution alone whether his land is affected. It was in evidence that certain tide lands commonly known as "State Tide Lands" were situated within the limits of the town of Berkeley. At the trial a certified copy of an official map showing the western boundary of said lands was introduced in evidence. While it is true that the original was intrusted to an official who was not located in Alameda County, the mere inconvenience to which a property holder might have been subjected in order that he might have learned the exact location of the westerly line of said lands does not invalidate the description. It was sufficient that

means were available for making certain the general reference to a well-known tract. (*Best* v. *Wohlford,* 144 Cal. 737, [78 Pac. 293] ; *Baird* v. *Monroe,* 150 Cal. 571, [89 Pac. 352] ; *Fox* v. *Townsend,* 152 Cal. 58, [91 Pac. 1004, 1007] ; *Houghton* v. *Kern Valley Bank,* 157 Cal. 291, [107 Pac. 113] ; *Campbell* v. *Shafer,* 162 Cal. 211, [121 Pac. 737] ; *Kehlet* v. *Bergman,* 162 Cal. 219, [121 Pac. 918] ; *Furrey* v. *Lautz,* 162 Cal. 399, [122 Pac. 1073].)

Other specifications of alleged error were made by appellants, but as they were not discussed in the brief filed, we will not review them in detail. We have examined them, however, and find them without merit.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.